UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WILFRED WHARFF (PRO SE)  **CV 05 4780**

**COMPLAINT**

_____

NAME OF PLAINTIFF(S)      TOWNES, J                JURY TRIAL DEMANDED

v.

STATE UNIVERSITY OF

NEW YORK HEALTH SCIENCE     RECEIVED
                            OCT 1 1 2005
CENTER AT BROOKLYN  BLOOM, MJ  PRO SE OFFICE

NAME OF DEFENDANT(S)

This action is brought for discrimination in employment pursuant to (check only those that apply):

✓      Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) (race, color, gender, religion, national origin).
**NOTE:** _In order to bring a suit in federal district court under Title VII, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission._

_____      Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 - 634 (amended in 1984, 1990, and by the Age Discrimination in Employment Amendments of 1986, Pub. L. No. 92-592 , the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE:** _In order to bring a suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission._

_____      Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 - 12117 (amended by the Civil Rights Act of 1991, Pub. L. No. 102-166).
**NOTE:** _In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a right to sue letter from the Equal Employment Opportunity Commission._

-1-

Jurisdiction is specifically conferred upon this United States District Court by the

aforementioned statutes, as well as 28 U.S.C. §§ 1331, 1343.  Jurisdiction may also be appropriate

under 42 U.S.C. §§ 1981, 1983 and 1985(3), as amended by the Civil Rights Act of 1991,

Pub. L. No. 102-166, and any related claims under New York law.

1.      Plaintiff resides at:

794 MIDWOOD ST APT#6C
Street Address

KINGS, N.Y, 11203, (718) 493 7775.
County   State   Zip Code   Telephone Number

2.      Defendant(s) resides at, or its business is located at:

450 CLARKSON AVE.
Street Address

KINGS, BROOKLYN, NY, 11203
County   City   State   Zip Code

3.      The address at which I sought employment or was employed by the defendant(s) is:

450 CLARKSON AVE
Street Address

KINGS, BROOKLYN, NY, 11203
County   City   State   Zip Code

4.  The discriminatory conduct of which I complain in this action includes
    (check only those that apply).

    \_\_\_\_\_              Failure to hire.

    \_\_\_\_\_              Termination of my employment.

    ✓              Failure to promote.

    \_\_\_\_\_              Failure to accommodate my disability.

    ✓              Unequal terms and conditions of my employment.

    ✓              Retaliation       *DISPARATE TREATMENT*

    ✓              Other acts (specify): *FAILURE TO POST PROMOTIONAL VACANCIES IN A TIMELY MANNER, TAYLORIN REQUIREMENTS TO MEET. INCONSISTENT*

*NOTE: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

5.  It is my best recollection that the alleged discriminatory acts occurred on:
        *SEE ATTACHED*
    Dates(s)

6.  I believe that the defendant(s) (check one)

        ✓    is still committing these acts against me.

        \_\_\_\_\_    is <u>not</u> still committing these acts against me.

7.  Defendant(s) discriminated against me based on my:
    (check only those that apply and state the basis for discrimination, for example,
    what is your religion, if religious discrimination is alleged)

    [ ]    race   ✓      [ ]    color _____

    [ ]    gender/sex *D 2 CV0488 PENDING* religion _____

    [ ]    national origin \_\_\_✓_____

    [ ]    age _____    My date of birth is: _____
                                                 Date

    [ ]    disability _____

*NOTE: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court.*

8.    The facts of my case are as follows:

_____

_____

_____

SEE ATTACHED

_____

_____

_____

_____

(Attach additional sheets as necessary)


**Note:**    As additional support for your claim, you may attach to this complaint a copy of the charge filed with the Equal Employment Opportunity Commission, the New York State Division of Human Rights, or the New York City Commission on Human Rights.

9.    It is my best recollection that I filed a charge with the New York State Division of Human Rights or the New York City Commission on Human Rights regarding defendant's alleged discriminatory conduct on: ___7/29/03___.
                                                                                Date

10.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission regarding defendant's alleged discriminatory conduct on: ___4/26/05___.
                                                                                Date

**Only litigants alleging age discrimination must answer Question #11.**

11.     Since filing my charge of age discrimination with the Equal Employment Opportunity

Commission regarding defendant's alleged discriminatory conduct (check one),

       _____     60 days or more have elapsed.

       _____     less than 60 days have elapsed.


12.     The Equal Employment Opportunity Commission (check one):

       _____     has **not** issued a Right to Sue letter.

       _____     has issued a Right to Sue letter, which I
**received** on _____.
                              Date

**NOTE:**     Attach a copy of the Right to Sue Letter from the Equal Employment Opportunity
Commission to this complaint.

WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate,
including injunctive orders, damages, costs, and attorney's fees.

PLAINTIFF'S SIGNATURE

WILFRED  WHARFF  (PRO SE)

Dated: _10/11/05_

794 MIDWOOD ST APT 6C
Address
BROOKLYN NY 11203

(718) 493 7775
Phone Number

-5-

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

——————————————————————————X

WILFRED   WHARFF        (Pro-Se)

                                        NEW

                                        COMPLAINT

                                        JURY TRIAL REQUESTED

Plaintiff,

      -against-

STATE UNIVERSITY OF NEW YORK

HEALTH SCIENCE CENTER AT BROOKLYN

                       Defendant

——————————————————————————X

RE: EEOC Case# 16G-2003-03234

Plaintiff appealed to the EEOC to review decision handed down  by the SDHR on
April 22nd 2005 and although the EEOC adopted the decision of the SDHR, Plaintiff was
allowed 90 days from the date received **to file a suit in the UNITED STATES
DISTRICT COURT**. Plaintiff received decision on August 1, 2005. **(Exh.1 & 1a)**

Plaintiff (Pro Se), complaining of the Defendant, respectfully shows to this Court and
alleges:

1. That at all times hereinafter mentioned, and at the commencement of this action, Plaintiff was a resident of the County of Kings, State of New York.

2. I am a Black male, a naturalized citizen and was born in the Island of Trinidad West Indies.

3. I was hired by the Defendant on or about July 15, 1984, for the position as a laboratory Technologist 3. My work performance and attendance have been satisfactory.

4. I have been employed with the State University of New York Health Science Center for 21 years.

5. Filled in as an interim supervisor at SUNY chemistry Laboratory for a period of one year on two occasions when a supervisor quit or retired.

6. At that time I had a supervisor's license (City of New York was responsible for licensing during that time). Plaintiff has a  BS double major Chemistry/ Medical Technology and MSA (Hospital Administration) **(Exh. 2, 2a, 2b)**

7. Experience as an assistant supervisor from 1970-1978 (Publishing Company).

8. State University of New York Health Science Center has either failed to post Promotional Vacant positions or posted them on or after the expiring date for internal applicant.

9. Some selected employees were informed by word of mouth while others were not aware of the Promotional vacancy (s).(Plaintiff was not aware).

10. State University of New York Health Science Center at Brooklyn has engaged in disparate treatment in promoting Plaintiff.

11. State University of New York Health Science Center at Brooklyn is inconsistent in their promotion policy.

12. State University of New York Health Science Center at Brooklyn retaliated against Plaintiff by intentionally depriving or tending to deprive Plaintiff of employment opportunities. Reason for retaliation is that plaintiff has filed a gender law suit in the United States District Court Eastern District of New York (02 CV 0488 (ST) (LB). Decision is still pending.

13. Plaintiff had filed complaint on 3/19/02 at SDHR alleging discrimination, citing disparate treatment and denial of equal opportunity to apply for a promotional position (technologist 2). Position was obscured from view.

Plaintiff complained to Lab Administrator who had agreed to extend the submission time, but plaintiff did not apply because Plaintiff had reason to believe that the position was tailored or set up for a female employee Ms. Alfaro, a friend of the Senior Associate Administrator. (Both from Puerto Rico.) Plaintiff pleaded this matter in opposition to defendant's summary judgment. **(Exh. 3)**

14. On or about January 24, 2002, there was another vacant position for TH CLIN LAB TECH 1. Again, this position was obscured from view. Plaintiff went on annual leave on or about January 29, 2002 and prior to the leave the position was not posted. On Plaintiff's return to duties, Plaintiff observed the vacant position which was expired for internal applicants on January 24, 2002. Plaintiff once more complained to Lab Administrator who stated that the position had already been filled. **(Exh. 4)**

15. On or about June 6, 2002 another vacant position for TH CLIN LAB TECH 1 was again obscured from view. On learning of the position, Plaintiff complained to Lab Administrator who agreed to extend the time limit. Plaintiff applied and was qualified for the position for which the employer was seeking applicants. On learning that the employer was in the process of interviewing prospective candidates, Plaintiff inquired about his interview date only to be informed that Plaintiff's resume has been misplaced or lost. Plaintiff was asked to present a copy of resume. Plaintiff complied. Plaintiff to the best of his knowledge was the last to be interviewed. **(Exh. 5 & 5a)**

16. Plaintiff was rejected despite his qualifications. Position remained open after Plaintiff's rejection and employer continued to seek applications from people with lesser qualifications. The selected candidate Mr. Cordero (Spanish speaking) applied on or about November 13, 2002 after the closing date of June 30, 2002 for off-campus applicants. Defendant went in search of Mr. Cordero, a retired employee at KCH, after learning that the judge had asked the question, if the above mentioned position was filled who is the successful candidate, male or female? **(Exh. 6 & 6a)**

17. On or about February 2003 the SDOH rejected Mr. Cordero as unqualified for the position of supervisor. **(Exh. 7)**

18. On or about October 29, 2002 another vacant promotional position for TH CLINICAL LAB TECH 1 was obscured from view (shift 12:00am-8:00am) Plaintiff was unable to apply because the internal consideration date for internal applicants had expired when the posting was observed. Mr. Torres an internal candidate was informed of the position. He applied and was the successful candidate. It was quite evident that the position was tailored for Mr. Torres (Spanish speaking).**(Exh. 8)**

19. On or about March 11, 2004 a position Line#52886 for TH CLINICAL LAB TECH II appeared on the notice board . This position was posted in a timely manner. The description of duties clearly sought for an assistant supervisor for Venipuncture and Central Accessioning areas. Plaintiff did not apply for this position because the description of duties is below the status of a technologist. **(Exh. 9)**

20. On or about July 9, 2004 the same Line # 52886 appeared seeking a TECH II for the Department of Hematology and the description of duties was changed. In December 2004 Ms. Saul held a meeting and she stated that Mr. Jaime Barrios would be in charge of both Chemistry & Hematology in the absence of the supervisor. (The position was posted on the very day it was expired for internal applicants). When Plaintiff challenged her about the posting of the position Ms. Saul handed a copy to the supervisor, Ms. Silcott, of another posting which displayed another date June 8, 2004 with the same Line #52886. When asked who else applied for the position Ms. Saul said Mr. Barrios was the only applicant. A cursory glance of all promotional positions will show that this was the **only position where management sought the qualification of a person with a foreign degree. This was tailored for Mr Barrios (Spanish speaking).** It is believed that Mr. Barrios has been in orientation for the Supervisory position. **(Exh. 10 &11)**

21. On or about March 9, 2004 two vacant positions for TECH I were posted. One position was an evening shift (no shift was mentioned) and the other was a day shift. Plaintiff tendered resume for both positions. Although Plaintiff was qualified, Plaintiff was rejected. Two female employees were selected even

though both were rejected for lower level positions. The both employees are not better qualified than Plaintiff. **(Exh. 12)**

22. Prior to all of the above Mr. Jeronimo Belgrave has been promoted twice. To the best of Plaintiff's knowledge the positions were not posted. Plaintiff is alleging that Mr.Belgrave at the time was not better qualified for the positions.

23. As a result of the foregoing, Plaintiff has sustained a serious injury as defined in Title 42 of the United States Code subsection 2000-2(e)-2000 (e)17 unlawful employment practices. Plaintiff is also employing Section 703(a) (2) which prohibits practices that would deprive or tend to deprive "any individual of employment opportunities."

24. As a result of the foregoing, Plaintiff has been damaged in the sum of SEVEN HUNDRED AND FIFTY THOUSAND DOLLARS($750,000.00).

25. WHEREFORE, Plaintiff demands judgment against defendant for sum of SEVEN HUNDRED AND FIFTY THOUSAND DOLLARS; together with the cost and disbursements of this action.

Respectfully Submitted

Wilfred Wharff (Plaintiff Pro Se)

794 Midwood Street #6C

Brooklyn NY 11203

Date: 10/11/05

:

:

:

EX 1

April 26, 2005


Wilfred Wharff                Complainant


-against-


State University of New York    Respondent
Health Science Center at Brooklyn


SDHR NO:1D-E-N-03-5806720-E

Federal Charge No.: 16GA303234

EEOC, New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

Dear Sir/Madame,


Complainant, Wilfred Wharff, has received decision from SDHR dated 4/22/05 on 4/25/05 and hereby appealed the decision of SDHR that stated that there is No Probable Cause to believe that Respondent has engaged or is engaging in unlawful discriminatory practice complained of.

Complainant respectfully asked EEOC to carefully review the facts of this matter and allow Complainant to be heard before a Judge who is said to be the corner stone of the temple of justice.

The facts are as follows:

1. On September 5th, 2002, (Claimant's response dated 2/28/05 stated on or about September 8th 2002-this was incorrect see transcript from the Court) Respondent's attorney Ms. Spann said that her inquiry indicated that another person was hired for the position .(Exhibit A page 2-lines23-24., page 3- lines 4-6.page 6-lines 23-25.page 7-lines 1-20.)The summary of applicant flow data by sex and ethnicity has displayed two important deficiencies. (a) No date indicating when the form was filled out. (b) No signature to determine or verify the validity of the decision

2. However, a cursory glance of the Flow Data sheet revealed (a) Complainant, Wilfred Wharf, and Ms. Laura Modifier received 1—good candidate, not first choice. (b) Amjad Aziz and Mohammad T. Khan received 2- Insufficient related experience. Exhibit B

3. Exhibit 1 shows that Mr. Cordero tendered his resume on November 13th 2002. Therefore, Mr. Cordero was not the candidate hired on or prior to September 5th, 2002.It is obvious that Mr. Wharff, Complainant was not the successful candidate. Thus, by the process of elimination it was the female Laura Modafferi who was hired for the position. On learning what the judge had asked and realizing that the promoting or hiring of a female will be detrimental to the pending civil matter, Respondent went in search of a male.

4. DOH clearly stated that Mr. Cordero does not meet the requirements as a supervisor. In other words he is/was not qualified. Mr. Cordero was finally removed. (Exhibit 2)

5. Mr. Cordero was hired to supervise and work in Chemistry and at the same time monitor the activities of employees in hematology, Mr.Cordero's resume does not display any vast experience in chemistry or Hematology. He worked and did internship in several departments at KCHC including the morgue assisting in autopsies. (At the appropriate time Complainant will put forward witnesses to verify Mr. Cordero was not an expert in Chemistry). (Exhibit 1)

6. Complainant in his response date 2/28/05 did not state Ms. Maria Mendez played a role in the interviewing process (SDHR has failed to quote Complainant correctly). Complainant unequivocally stated Ms. Mendez played a pivotal role (missed out) in Cordero's hiring (page 3- paragraph 3) (exhibit 3).See extract from Ms. Mendez declaration signed and dated February 23, 2004. (Exhibit 4).

7. The position was not reopened to field additional candidates as stated by respondent. In Respondent's summary judgment no reopening to field other candidates was ever mentioned. Respondent has not proffered tangible proof that the vacancy was reopened or the time extended  The reason Respondent has mentioned this "reopening" is because Complainant found out through discovery that Mr. Cordero tendered his resume long after the closing date. (see page 2-paragraph-3.1  Exhibit 3 for complete explanation) (See Exhibit 1date resume was handed in)

8. The only resume that was misplaced or loss was Complainant's. Respondent at no time denied that in their summary judgment.

9. There is retaliation not to promote Complainant because of filing prior discriminatory charges at SDHR and Eastern District court at Brooklyn

10. Respondent continues to engage in unlawful discriminatory practice (Exhibit 5 signed by 24 employees and sent to the Governor's office of Employees Relations.) (Exhibit 6-The Crisis in Employee Morale)

11. Copy of original Complaint (Exhibit 7)

12. Copy of SDHR determination after investigation (Exhibit 8).

## Conclusion.

SDHR is bias in their investigation and determination. SDHR has failed to recognize the fact that Mr. Cordero was rejected as supervisor by DOH. Respondent knew or should have known that Mr. Cordero was not qualified as a supervisor. However, the SDHR has buried its head in the sand and ignore an important fact. To accept a fabricated statement that at the "time Respondent **thought** Mr. Cordero was the best qualified", is absolutely wrong. This is the second time SDHR has failed to adequately investigate discriminatory misconduct of Respondent (exhibit 9- 58 1:4,All Laboratories are given and should have copies of the Rules

Respondent has not proffered or articulated a legitimate, nondiscriminatory or non-pretexual explanation for its action. Complainant has clearly established a prima facie case of discrimination. There is cause for action. Complainant respectfully requests to have this matter heard before a court.

Respectfully,

Wilfred Wharff BS, MSA
794 Midwood Street #6C
Brooklyn NY 11203
04/26/05.

CERTIFIED MAIL# 7002 3150 0000 4008 3195

## DISMISSAL AND NOTICE OF RIGHTS

To: **Wilfred Wharff**
    **794 Midwood Street**
    **Brooklyn, NY 11203**

From:   **New York District Office**
      **33 Whitehall Street**
      **5th Floor**
      **New York, NY 10004**

[ ]  *On behalf of person(s) aggrieved whose identity is*
    *CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2003-03234 | **Holly M. Woodyard,**<br>**Investigator** | **(212) 336-3643** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ]  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]  While reasonable efforts were made to locate you, we were not able to do so.

[ ]  You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[ ]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

JUL 2 9 2005

Enclosure(s)

**Spencer H. Lewis, Jr.,**
**Director**

*(Date Mailed)*

cc:  **STATE UNIVERSITY OF NEW YORK;**
    **HEALTH SCIENCE CTR.**
    **State University Plaza**
    **Albany, NY 12246**
    **Attn: Director of Human Resources**

IN PURSUANCE OF THE AUTHORITY VESTED IN IT BY THE LAWS OF THE STATE
OF NEW YORK AND UPON RECOMMENDATION OF THE FACULTY OF

# THE COLLEGE OF STATEN ISLAND

OF

## THE CITY UNIVERSITY OF NEW YORK

THE BOARD OF TRUSTEES OF THE CITY UNIVERSITY OF NEW YORK

CONFERS UPON

## WILFRED D. WHARFF

THE DEGREE OF

## BACHELOR OF SCIENCE

(CHEMISTRY/MEDICAL TECHNOLOGY)

WITH ALL THE RIGHTS, PRIVILEGES, IMMUNITIES, AND HONORS THEREUNTO
BELONGING AND IN TESTIMONY THEREOF IT GRANTS THIS DIPLOMA SEALED
WITH THE SEAL OF THE COLLEGE AND SIGNED BY THE APPROPRIATE OFFICERS OF
THE BOARD, THE UNIVERSITY, AND THE COLLEGE.

JANUARY 31, 1982

CHAIR OF THE BOARD

PRESIDENT OF THE COLLEGE



# Central Michigan University



By authority of the Board of Trustees
and upon the recommendation of the faculty confers upon

## Wilfred D. Wharff

the degree of

## Master of Science in Administration

with all the rights and honors thereto appertaining.

In Witness Whereof, the signatures of its officers are affixed
this month of August, 1988.



_Rachael C. Morone_
Chair, Board of Trustees

_Edward B. Jakubauskas_
President



Ex 2D



### THE CITY OF NEW YORK
### DEPARTMENT OF HEALTH

DOCUMENT NO. 079424

THIS PERMIT OR CERTIFICATE OF QUALIFICATION IS ISSUED TO THE PERMITTEE AND PREMISES OR THE CERTIFICATE HOLDER DESIGNATED HEREON. IT IS GRANTED UNDER CONDITIONS OF COMPLIANCE WITH PROVISIONS OF THE HEALTH CODE AND REGULATIONS THEREUNDER.

### PERMIT OR CERTIFICATE OF QUALIFICATION

NOT TRANSFERABLE

ORIGINAL ISSUE                    PERMIT NO 52 052962 R0

CLINICAL LAB TECHNOLOGIST

"IF THE PERMITTEE / LICENSEE, OR HIS EMPLOYEES OR AGENTS, REFUSE TO ANSWER QUESTIONS IN RELATION TO THIS PERMIT / LICENSE AFTER BEING GRANTED TESTIMONIAL OR USE IMMUNITY, THIS PERMIT / LICENSE MAY BE REVOKED, OR OTHER APPROPRIATE ACTION TAKEN."

WHARFF, WILFRED D.
794 MIDWOOD STREET        6C
BROOKLYN            N.Y.    11203

DATE OF ISSUE 01/26/93 DATE EXPIRES 06/30/94    FEE    $60.00

POST CONSPICUOUSLY

THIS PERMIT IS LIMITED TO THE QUALIFICATION AREA CODES DESIGNATED BELOW:

011 014 016 020 028 030 032 034 35B 037

*Margaret A. Hamburg, M.D.*
PB

MARGARET A. HAMBURG, M.D.
COMMISSIONER OF HEALTH

# STATE UNIVERSITY OF NEW YORK · HEALTH SCIENCE CENTER AT BROOKLYN
## 450 CLARKSON AVENUE, BOX 1194, BROOKLYN, NEW YORK 11203

Applications are invited for consideration for appointment to the following position:

**Campus:** SUNY Health Science Center @ Brooklyn

**Budget Title:** TH CLIN LAB TECH II

**Department:** Clinical Laboratories - Chemistry

**Descriptive Title:**

**Professional Rank:** SL-3

**Item Number:** POS# 95023647 Line # 28620

**Salary Range:** $31,721.00-$68,132.00

**Date To be Filled:** ASAP

**Additional Position Information:**

**Brief Description of Duties:**

Technologist is responsible for routine and STAT procedures in the Clinical Labs. Must have a working knowledge of routine analytical instrumentations and methods logics. Specific familiarization with J&J Vitros-950, Vitros-250 Abbott Assym, IM and NOVA and Radiometer Blood Gases, Knowledge of Atomic Absorption, HPLC (Bio-Rad Variant II) and Immunofixation techniques

Working knowledge of LAB Information System (LIS). Computer literate with Windows NT applications. Knowledge of and QA is a must.

Will monitor quality control and performance improvement activities and Point of Care (POC) testing. Will assist supervisor staff in the overall operations of the laboratory

**DUTIES AND RESPONSIBILITIES ARE NOT LIMITED TO THE ABOVE POSITION DESCRIPTION**
**Qualifications:** BS degree in Medical Technology. Physical or Biological Sciences with 5 years of experience. M.S. or AS certification preferred. Experience in Chemistry and Hematology required.

**B/PR-28620-01**

Persons interested in the above position should submit a resume along with a cover letter (must include Budget Title and Item #) to:



**Office of Training & Employment Services**
**Box 1194**
**450 Clarkson Avenue**
**Brooklyn, New York 11203**

Closing date for receipt of applications:

**Internal Consideration Program:** 3/21/01

**Off-campus recruitment:** 4/13/01

STATE UNIVERSITY OF NEW YORK IS AN EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER

FORM UP-5
REVISED ALBANY PLAN
12/96

# ANNOUNCEMENT OF

# Professional Vacancy

## STATE UNIVERSITY OF NEW YORK · DOWNSTATE MEDICAL CENTER
### 450 CLARKSON AVENUE, BOX 1194, BROOKLYN, NEW YORK 11203

Applications are invited for consideration for appointment to the following position:

| | | | |
|---|---|---|---|
| **Campus:** | SUNY Downstate Medical Center | **Budget Title:** | TH CLIN LAB TECH I |
| **Department:** | Clinical Labs - Chemistry | **Descriptive Title:** | TH CLIN LAB TECH I |
| **Professional Rank:** | SL-4 | **Item Number:** | POS# 95067666  Line # 52856 |
| **Salary Range:** | $37,982.00-$80,590.00 | **Date To be Filled:** | ASAP |

**Additional Position Information:** HOURS:  8:00 A.M. - 4:00 P.M. OR 12:00 A.M. - 8:00 A.M.

**Brief Description of Duties:**

The assistant supervisor is in charge of and responsible for the operation of a laboratory

Adhere to departmental, hospital, and governmental regulations

Train personnel in technical methodologies and interpretation of results

Day to day laboratory operation

Review quality control

Timely performance of specimen testing

Recording and archive test and QC results

Maintain inventory and statistics

Shift staff around or assign staff additional duties in order to maintain work flow smoothly

Coordinate administrative operations for the laboratories on weekends

**DUTIES AND RESPONSIBILITIES ARE NOT  LIMITED TO THE ABOVE POSITION DESCRIPTION**
**Qualifications:** Bachelors degree in Medical Laboratory Medicine or Biological science required.  ASCP Certification preferred.  Five years minimum supervisory experience in Chemistry and hematology Laboratories

### NOTE: PRIORITY CONSIDERATION GIVEN TO RIF AFFECTED EMPLOYEES

B/PR-52856-02

**Persons interested in the above position should submit a resume along with a cover letter (must include Budget Title and Item #) to:**

**Office of Training & Employment Services**
**Box 1194**
**450 Clarkson Avenue**
**Brooklyn, New York  11203**

Closing date for receipt of applications:

| Internal Consideration Program: 1/24/02 | Off-campus recruitment: 2/16/02 |
|---|---|

STATE UNIVERSITY OF NEW YORK IS AN EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER

FORM UP-5
REVISED/ALBANY PLAN
12/86

*POST*
*6/6/c₂*



# ANNOUNCEMENT OF PROFESSIONAL VACANCY

## STATE UNIVERSITY OF NEW YORK · DOWNSTATE MEDICAL CENTER
450 CLARKSON AVENUE, BOX 1194, BROOKLYN, NEW YORK 11203

| Department: | Clinical Laboratories | Budget Title: | TH CLIN LAB TECH I |
|---|---|---|---|
| Professional Rank: | SL-4 | Descriptive Title: | TH CLIN LAB TECH I |
| Salary Range: | $37,982.00-$80,590.00 | Item Number: | Line# 52847 POS# 95023503 |

**Additional Position Information:** FLEXIBLE DAYS AND HOURS

**Brief Description of Duties:** The assistant supervisor will be responsible for the operations of the clinical laboratories in the absence of the Laboratory Supervisor Adhere to departmental, hospital, and governmental regulations Train personnel in technical methodologies and interpretation of results Oversees day to day laboratory operation Review quality control Timely performance of specimen testing Records and archive test and QC results Maintain inventory and statistics Shift staff around or assign staff additional duties in order to maintain work flow smoothly Coordinate administrative operations for the laboratories on weekends

## DUTIES AND RESPONSIBILITIES ARE NOT LIMITED TO THE ABOVE POSITION DESCRIPTION

**Qualifications:** Bachelors degree in Medical Laboratory Medicine or Biological science required. ASCP Certification preferred. Five years minimum supervisory experience in Chemistry and Hematology Laboratories

### NOTE: PRIORITY CONSIDERATION GIVEN TO RIF AFFECTED EMPLOYEES

Posting Ref#: B/PR-52847-02

| Persons interested in the above position should submit a resume along with a cover letter (must include Budget Title and Item # ) to: |  | Office of Training & Employment Services Box 1194 450 Clarkson Avenue Brooklyn, New York 11203 |
|---|---|---|

### Closing date for receipt of applications:

| Internal Consideration Program: 06/07/02 | Off-campus recruitment: 06/30/02 |
|---|---|

STATE UNIVERSITY OF NEW YORK IS AN EQUAL OPPORTUNITY / AFFIRMATIVE ACTION EMPLOYER

# WILFRED D. WHARFF
794 Midwood Street, Suite 6C
Brooklyn, N.Y. 11203
E-mail:  WWharff@aol.com

June 10, 2002

Attn: Mr. Pervez Mirza
SUNY at Brooklyn
450 Clarkson Avenue
Brooklyn NY 11203

Dear Mr. Pervez Mirza,

My name is Wilfred Wharff and I am currently seeking a position as an assistant supervisor in the department of clinical chemistry at SUNY at Brooklyn where I am presently employed for eighteen years. I am also employed at the Brookdale Medical Hospital in the department of Special Chemistry/Routine Chemistry for over twenty years. I am forwarding my resume in the hopes that I may be given the opportunity to utilize my acquired expertise to enhance professional growth and advancement.

I am a graduate of Staten Island College and Central Michigan University where I obtained a Bachelor of Science in Chemistry/Medical Technology and Masters of Science Administration in hospital administration, respectively.

I was first issued a permit or certificate of qualification by the City of New York as Clinical Laboratory Supervisor.

During my employment with SUNY at Brooklyn, on two occasions in the absence of the supervisor (for 1 year on each occasion) I flawlessly shouldered the responsibilities as an assistant supervisor in the department of clinical chemistry evening shift

Approximately four years ago, I was selected to join the executive officers of Brookdale Hospital to participate in the planning and restructuring of the Institution. The intellectual training I have acquired in the field has given me the opportunity to offer my knowledge in the furtherance of the hospital goals.

I believe that I can make significant contributions to the needs of the Institution. I would appreciate the opportunity to discuss my qualifications with you in an interview. Thank you for your time and consideration

Regards,

Wilfred Wharff

# WILFRED D. WHARFF
794 Midwood Street, Suite 6C
Brooklyn, N.Y. 11203
e-mail: WWharff@aol.com

**EDUCATION:**

**CENTRAL MICHIGAN UNIVERSITY**, Mount Pleasant, MI
M.S.A., Health Service Administration, 1988

**COLLEGE OF STATEN ISLAND**, Staten Island, NY
B.S., Chemistry/Medical Laboratory Technology, 1982

**EXPERIENCE:**

**DOWNSTATE MEDICAL CENTER**, Brooklyn, NY
*Medical Technologist III (Grade 2)*:
Perform routine clinical testing and analysis of specimens submitted from various          7/1984-Present
departments of the hospital. Assist Chief Laboratory Technician in all
administrative aspects of the department. Collect data and make statistical
analysis of all tests that are performed by the laboratory. Submit data to various
department heads when requested. Perform Blood Gas analysis, Blood and
Pregnancy (BHCG), Urine Test, and Routine Chemistry, and Perform special
chemistry, such as FK506.

**BROOKDALE MEDICAL CENTER**, Brooklyn, NY
*Senior Veni-Puncture Technician (Phlebotomist)*
Perform Endocrinology, Diagnostic Immunology, Hepatitis, Anti-HIV screening,          9/1981-Present
Clinical Chemistry, Urinalysis, Therapeutic Drug Monitoring. Responsible for
expediting results after they are reviewed and verified. Experience with Atomic
Absorption processes

**PUBLISHERS DIST. CORP.**, New York, NY
*Assistant Supervisor, (Accounts Receivable and Payable)*          10/1970-9/1978

**MINISTRY OF PLANNING& DEVELOPMENT**, Trinidad, WI
*Senior Clerk.*          2/ 1965-9/1970

**SKILLS:**

Literate in French and Latin. Proficient in the following programs: Hepatitis BS
AG Confirmation, Anti-HIV WB Confirmation, LEAD. Maintain and operate
various instruments, such as VITROS 950 and 250, AXYM, IMX, TDX, NOVA
and Radiometer Blood Gasses, QM 300, EXL50, BXL 80, IMMULITE,
ACCESS, COMMANDER, LABO Tech, and HELENA-Rep. Microsoft Word.

**ACTIVITIES:**

Delegate for Local Union 1199. Amateur videography and photography. Player
in various Soccer Leagues. Knowledge and participation in equestrian sports, and
training of thoroughbred horses. Traveling, and participator in various marathons
and walks in support of the cure for breast cancer.

**REFERENCES:**          Furnished upon request



# PEDRO S. CORDERO

1740 Troy Avenue
Brooklyn, New York 11234
Email: User257481@aol.com
Telephone: (718) 377-7627

## Objective:

   To use my skills and expertise in clinical laboratories in order to enhance the quality and the expeditious delivery of health care services. With a past rooted in a strong tradition of excellence and the recognition that our goals and the future are intertwined, I believe that a commitment to quality and expediency are the source of strength that gives credibility to whatever we do in the Clinical Laboratories.

## Qualifications:

   I'm constantly searching for new and innovative ways to address emerging opportunities and challenges. As an innovative person and a competent laboratory professional I have a successful performance record in all area of clinical laboratories, laboratory & radiology information systems, laboratory safety, and hazardous materials control, among others.

## EDUCATION:

**1991-1996**   Master Degree of Arts in Community Health, Brooklyn College

**1969-1971**   Bachelor of Science, Brooklyn College
(Completed additional credited courses in Blood Bank, Economy, Accounting, Math, and Political Science, etc).

**1965-1969**   Associate in Applied Science in Medical Technology, Brooklyn Technical College
(Laboratory internship consisting of clinical laboratory methodologies and principles of Hematology, Clinical Chemistry, Cytology, Microbiology, Blood Bank, Histology, Serology, and Phlebotomy at the Long Island College Medical Center in Brooklyn).

**1960-1964**   United States Marine Corps
(Attended Atomic-Chemical & Biological Warfare School)

**1957-1960**   John Jay School, Diploma
(Active in Swimming Team, Spanish, and Acrobatic Clubs)

## Employment:

Manager at Kings County Hospital Laboratory and the Radiology Information Systems. 1995-1998

Manager for the hospital-wide intravenous and phlebotomy services. Managed over eighty employees and supervisors. 1993-1995.

Coordinating Manager of the chemical and hazardous material control program, mandated education for pathology personnel, trouble shoot various technical and operational function in the Pathology building, Fire Marshal, coordinated the Chemical Hygiene and Blood borne Diseases Plan. 1986-1993

Diagnostic Immunology, Parasitology, and Tropical Diseases. 1982-1986

Coordinating Manager for the Emergency Room Stat Laboratory: Managed staff of over 60 employees and five supervisors. The following services were provided by the Stat Lab: Clinical Chemistry, Hematology, Blood Gases, Coagulation testing, Urine and Spinal Fluids analysis, and diagnostic microbiology. 1980-1982

Parasitology and Tropical Diseases Laboratory (Including blood parasites, IHA and IFA testing for Toxoplasmosis, amebiasis, Schistosomiasis, quality and work flow control, and writing procedures, etc. 1973-1980

Clinical Chemistry (all areas of clinical chemistry, microchemistry, and instrument trouble shooting,) 1969-1973

Mortuary Division, aids Pathology residents in their performance of autopsies, deal with families, and supervised the evening shift. 1964-1969

## Certifications:

Supervisor Diagnostic Immunology
Supervisor Syphilis Serology
Supervisor Parasitology
Technician Clinical Chemistry (all areas)
Phlebotomy (ASCP)

## Continued Education:

Laboratory Medicine (ASCP)
Science Journal (AAAS)
American Society for Bioethics and Humanities
American Journal of Clinical Pathology

Achievements:

- Participated as College of American Pathology's Inspector.

- Membership in the Hospital Bioethics Committee (1992-1998)

- Created and implemented and innovative curricula to certified phlebotomists and intravenous technicians, and teach third year medical students.

- Reorganized and managed the Stat Laboratory of over 60 technicians, technologists, and supervisors.

- Organized Hospital's "Aid Day" conferences, lecture on Aids, fund raised, and served as a liaison between patients and staff to enhance health services.

- Awarded Certificate of Appreciation in recognition of my outstanding performance as an employee in the Health & Hospital Corporation.

- Certified by the Health & Hospital Corporation as an HIV Trainer.

- Participation in Department Head meeting in preparation for the Join Commission of Health Care Organizations Inspections, and article 27.

- Managed the hospital wide Phlebotomy Service of eighty-two technicians and supervisors.

- Safety Officer certified by the Fire Department, responsible for mandated education and training, implemented the Chemical Hygiene Plan (CHIP), and had the responsibility for the removal of safety and health violations in the Pathology Department

- Project coordinator for the construction of the new Blood Bank, and the implementation of the Radiology Information System.

- Planned and provided training for all providers, nurses, and other hospital staff in the use of the hospital-wide laboratory and radiology information systems; also provided clearance for users pass words.

Available References:

Mr. Sajjad Ahmed, Assoc. Exec. Director Diagnostic Serv. (718) 245- 3305
Mrs. Theresa Glean, Assoc. Director                        (718) 245 5342
Dr. Carl Vinciguera, M.D., Director of Service Lab. Path.  (718) 245 5300
Mr. John Camacho, Hematology Department                    (718) 270-1654
John Santoro, Hematology Department                        (718) 245 5577

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


```
------------------------------X
                              :
WILFRED WHARFF,               :
                              :        CV-02-0488 (SLT)(LB)
               Plaintiff,     :
                              :        September 5, 2002
           v.                 :
                              :        Brooklyn, New York
STATE UNIVERSITY OF NEW YORK, :
                              :
               Defendants.    :
                              :
------------------------------X
```


TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          WILFRED WHARFF, PRO SE



For the Defendant:          KATHRYN CARTER SPANN, ESQ.



Audio Operator:


Court Transcriber:          ARIA TRANSCRIPTIONS
                            c/o Elizabeth Barron
                            328 President Street, #3
                            Brooklyn, New York 11231
                            (718) 522-2335


Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1          THE CLERK:  Civil cause for status conference

2     docket number 02-CV-488, Wharff versus State University of

3     New York.  If the parties would please state their names for

4     the record.

5               Mr. Wharff?

6               MR. WHARFF:  Wilfred Wharff.

7               THE COURT:  Good afternoon, sir.

8               MR. WHARFF:  Good afternoon.

9               MS. SPANN:  Kathryn Spann from the office of the

10    attorney general.

11              THE COURT:  Good afternoon, Ms. Spann.  We last

12    conferenced this case -- the initial conference was held on

13    July 25th.  At that time, I had asked for the parties to

14    exchange an initial round of documents and interrogatories.

15    Has that information been exchanged?

16              MR. WHARFF:  Yes, it has.

17              MS. SPANN:  Yes, it has.

18              THE COURT:  Okay, very good.  I had also at that

19    time asked Ms. Spann to look into some of the allegations

20    that Mr. Wharff had made, and specifically, whether or not

21    there was still any opportunity for promotion that was

22    available at the State University Health Science Center.

23              MS. SPANN:  My inquiry indicated that another

24    person has been hired for that position.

25              THE COURT:  So there was no settlement between the

1    parties at this point in time.

2              MS. SPANN:  That's correct.

3              MR. WHARFF:  Excuse me.  What did you say?

4              MS. SPANN:  It's my understanding that another

5    person has been hired for that position, the most recent

6    position that you indicated at the last conference.

7              MR. WHARFF:  Oh, yes.

8              THE COURT:  Remember I said, Mr. Wharff, if there

9    was a position that was available and if you could be

10   considered for that position, that perhaps this lawsuit

11   would not have to go forward because you would get the

12   consideration that you believed you had been denied in the

13   past.  So I directed Ms. Spann to find out regarding that

14   position, and she just informed the Court, as you heard,

15   that that position has already been filled, which I'm sure

16   does not surprise you, because it would have been too easy

17   to fix the case otherwise.

18             So at this point in time, with no settlement offer

19   being made, then my job is to move the case forward and to

20   discuss the discovery process, because the exchange that

21   you've been given is just an initial exchange.  One of the

22   reasons why I always want the plaintiff to get their

23   personnel file is because if you are trying to find counsel,

24   having those documents is always helpful, because you never

25   know what small things lurk in a personnel file that might

1    -- that counsel who practices in this area, that might

2    intrigue them enough to take on a matter.

3            So with that initial disclosure that's happened

4    and with no, at this point in time, settlement offer being

5    on the table, I am here to ask both sides how much time they

6    think they will need to conduct discovery.

7            Again, Mr. Wharff, if you were to find counsel,

8    any of these deadlines could be adjourned and counsel could

9    be the one that comes to the Court to ask for the deadline

10   to be adjourned.  But if I don't set these deadlines, then

11   nothing in your case is going to move forward.

12           MR. WHARFF:  Okay.

13           THE COURT:  Discovery is the process where you try

14   to collect proof that the reason why you have not gotten

15   these jobs is discrimination.  Now, I told you your

16   complaint was somewhat unusual because if I recall

17   correctly, it's a gender-based discrimination.

18           MR. WHARFF:  Right.

19           THE COURT:  So you're going to have to establish

20   that the reason why these other jobs were given to females

21   was because they did not want to give it to you because you

22   are male, obviously.  And you're going to need to try to

23   collect proof of that.  How long do you think and what types

24   of documents or -- again, there is a rule of the Federal

25   Rules of Civil Procedure, 30, which affords both parties to

1   conduct depositions.  A deposition is a basically question-

2   and-answer period conducted in front of a court

3   stenographer, where the court stenographer takes down the

4   questions and answers that are given by whoever the person

5   is that is being deposed.

6           Lawyers ordinarily conduct depositions, but there

7   is nothing that says that a pro se plaintiff cannot conduct

8   a deposition; there's just some cost attached to it.  And

9   the cost is generally the cost of the court stenographer.

10  Have you had a chance to think about what type of proof you

11  would need to collect to support your claim of

12  discrimination?

13          MR. WHARFF:  Well, no, not at this juncture.  As

14  far as I can see, looking through the response from

15  defendant, some of the peoples there, I observed certain

16  discrepancy.  For instance, in one of the application

17  resume, I observed something was erased.  Looking through

18  the file, I realized that two resume was not forwarded.

19          THE COURT:  Do you know who those two resumes

20  were?

21          MR. WHARFF:  I gave Ms. Spann copies of them.

22          THE COURT:  Okay.

23          MR. WHARFF:  Judge, even at the present -- when I

24  applied for the present position, which up to now they

25  haven't said anything to me, whether or not it was given to

1    someone else.  All I knew is that I hand in that resume on

2    June 10th, after you gave the order, the directive to give me

3    copies of my files, et cetera.  On August 1st, the evening I

4    walked into the job, I was told by one of the secretaries,

5    Mr. Wharff, your resume has been lost, would you please

6    bring us another copy?

7            I was shocked.  Anyhow, I complied.  I brought it

8    the next day.  And on the 7th, they gave me an interview.  I

9    was the last.  I understand there were only three

10   individuals, three of us in (ui) and someone from outside.

11   But at this juncture, only when Ms. Spann stated that

12   someone is hired, I didn't know.

13           THE COURT:  That you didn't get the job.  You

14   didn't know.

15           MR. WHARFF:  Right.

16           THE COURT:  Okay.  So they never notified you,

17   although the interview was when, sir?

18           MR. WHARFF:  On August 7th.  I was the last one to

19   be interviewed.  They had one on Monday, which I believe was

20   the 5th or the 4th.  It was two individuals and I was  the

21   last one.  I understand there was a fourth one.  But at this

22   juncture, it's only now I know that.

23           THE COURT:  And do you know if the person who got

24   the job, Ms. Spann, is a woman?

25           MS. SPANN:  I do not know.

1          THE COURT:  Well, that would be relevant at this

2     point in time to find out, since it's a gender-based

3     discrimination claim.  And again, if it's a man that got the

4     position, Mr. Wharff, I want you to understand that that

5     makes your claim for this particular job less likely, okay?

6          MR. WHARFF:  Okay.

7          THE COURT:  So what I would like to do now is try

8     to schedule the discovery.  I would encourage you, Mr.

9     Wharff -- it sounds like there is a very bad H.R. -- that's

10    human resources department in the science center in

11    Brooklyn, because nobody who was a good H.R. person would

12    let somebody wait for a month, especially when they know

13    that there is a pending discrimination claim, and not tell

14    them that somebody else had gotten the job and let them find

15    out in a court proceeding.

16          That's just not smart business, but that's not

17    anything that the law can particularly address.  And Ms.

18    Spann can't particularly address why somebody didn't have

19    the decency and courtesy to tell you that you had not gotten

20    the position in the month between.

21          At this point I would like to schedule the

22    discovery in this matter.  I would encourage you to still

23    try to find a lawyer.

24          MR. WHARFF:  Okay.

25          THE COURT:  I don't know if you were able to call

1  -- the City has a hotline.  The City Bar Association has a

2  legal referral service.  And even if you do not hire

3  somebody through -- it's the New York City Bar Association

4  on West 44th Street.  It has a legal referral service, where

5  if you tell them that you have an employment discrimination

6  case in federal court, they will give you the names of three

7  attorneys, and each of those attorneys will agree to see you

8  for a reduced rate, meaning if a lawyer's consult is

9  ordinarily, I don't know, $200 for a session, these lawyers,

10  by being part of this panel, have agreed to see you for, I

11  don't know, $40 for the consult.  I'm giving you figures

12  that I don't know for sure but as examples.

13          So you get to visit them.  They have no obligation

14  that they have to take your case.  You have no obligation to

15  do anything except pay that initial consult fee.  But again,

16  walking in with the papers, knowing what you know about the

17  file, explaining to them your situation and seeing whether

18  or not they would be willing to take your case -- most

19  lawyers who practice employment discrimination law will not

20  take a case for nothing.  They're going to take a contingent

21  fee, which means that if you recover, they will want a piece

22  of what you recover, and that will be part of the retainer

23  agreement.

24          Some or a lot of them will also, in addition to a

25  contingent fee, ask for some fee up front.  I'm not telling

1   you that you have to get a lawyer but I think it's worth it

2   going for a consult, so that at least if you say that

3   discovery cutoff is X date, what should I be asking for,

4   what should I do?  They might be able to give you some help,

5   okay?

6          I am going to give -- generally, I set very short

7   discovery dates.  But because I'm hopeful that you'll get a

8   lawyer and I don't want to scare anybody off, I'm going to

9   schedule it in January, the discovery cutoff.

10         As I said, one of the usual tools in discovery,

11  Mr. Wharff, is a deposition, and you can take a deposition.

12  It's Rule 30 of the Federal Rules of Civil Procedure.  And

13  if you go to the clerk's office downstairs, they have this

14  green civil procedure book and they also have what's called

15  a discovery packet, where they put together some of the

16  rules and forms about discovery.  So you can ask for that on

17  your way out today, a discovery packet from downstairs, but

18  I imagine that the State will want to take your deposition.

19         THE COURT:  Ms. Spann, do you want to schedule

20  something now, so that Mr. Wharff will know when to expect

21  it.

22         MS. SPANN:  That certainly works for me.  I was

23  contemplating something like early December, which would

24  work in with the time frame you had set.

25         THE COURT:  Okay.  I will set the discovery cutoff

1   in this case for January 31st, and that's 2003.  Do you work

2   nights still, sir?

3           MR. WHARFF:  I work the evening, yes, 4:00 to

4   12:00.

5           THE COURT:  Do you work during the day at all?

6           MR. WHARFF:  Yes.

7           THE COURT:  So why don't you take out your

8   calendar and try to arrange a date now, while we're in court

9   with Ms. Spann.  Since she knows that she's going to notice

10  your deposition, instead of it coming as a surprise to you

11  when it just comes in the mail, why don't you pick a date

12  with her now, write it into your book so that you can clear

13  that time from work.

14          She's entitled to take a one-day, seven-hour

15  deposition under the rules.  And generally speaking, if you

16  had a lawyer, the lawyers would work it out between them.

17  But again, since I don't want it to come as a surprise to

18  you and I want you to be able to plan ahead, and then if you

19  get to go see a lawyer, you could say, I've also gotten my

20  deposition they're going to take scheduled for such and such

21  a date.  This way, if you do get a lawyer, they come in and

22  they know everything that's going to happen and there are no

23  surprises, okay?

24          Ms. Spann, do you have a date to propose to Mr.

25  Wharff?

1        Mr. Wharff, if you could look at your appointment

2   book, if you have one.

3        MS. SPANN:   I would suggest some time in the first

4   week of December.

5        THE COURT:   The first week of December is December

6   2nd is the Monday and December 6th is the Friday.   Is there

7   any day that week that you can set aside?

8        MR. WHARFF:   Yes, Judge, I have a lot of vacation

9   times, so I can use one.

10       THE COURT:   So what day that week, December 2rd,

11  3rd, 4th, 5th or 6th, would you prefer?

12       MR. WHARFF:   Any one is okay; it's fine.

13       THE COURT:   Ms. Spann, do you want to pick one of

14  those dates now?

15       MS. SPANN:   Should we say Friday, the 6th?

16       MR. WHARFF:   The 6th?   Okay.

17       THE COURT:   Friday, the 6th of December.   The

18  reason why I'm doing this, Mr. Wharff -- I don't generally

19  schedule dates for such things.   But again, Ms. Spann would

20  put out the notice and you wouldn't have any prior notice

21  that that would be the date until you got it in the mail.

22  She will still put out the notice, but this way you could

23  plan for it, okay?

24       She may want to conduct discovery before that

25  date, to get documents that you may have or anything that

1   she thinks was raised.  Those will be made in writing to you

2   and you generally have thirty days to respond to her

3   request.  Likewise, any documents that you know that might

4   exist -- for instance, person X got a job that you had

5   applied for.  You feel that you were more qualified than

6   person X.  You could ask for documents regarding person X.

7            But again, those requests have to be made in

8   writing.  They give her thirty days to respond.  And the

9   format for that request in writing should be given to you by

10  the clerk's office downstairs when you request this

11  discovery package.

12           MR. WHARFF:  So when I got down there, the clerk

13  will give me a discovery package.

14           THE COURT:  Right.  You ask to speak to the pro se

15  clerk and you say, I understand you have materials on

16  discovery; could you please give me those materials, okay?

17           MR. WHARFF:  Okay.

18           THE COURT:  Is the defendant contemplating making

19  a dispositive motion in this matter?

20           MS. SPANN:  We do, your Honor.

21           THE COURT:  How long after the January 31st cutoff

22  do you believe that you would need to file a motion?

23           MS. SPANN:  A month.

24           THE COURT:  A month, okay.  That would give us

25  until -- actually, February 28th is a Friday, which is four

1   weeks later.  But not to cut you completely short --

2          MR. WHARFF:  Judge, February 28th -- from February

3   21st to March 12th, I will e out of the country.

4          THE COURT:  That's quite okay.  We'll schedule

5   this around that, okay?  From 28th until March what?

6          MR. WHARFF:  February 21st until March 12th of 2003,

7   I will be out of the country.

8          THE COURT:  I will give them until March 14th to

9   file any motion.  Again, you have passed the state of the

10  pleadings.  Now we are conducting discovery.  After they

11  conduct your deposition, they may move the Court under Rule

12  56, which is the summary judgment rule -- Rule 56.  You can

13  write this down -- saying that there is no issue that we

14  need to go to trial on here because the facts are not in

15  dispute and Mr. Wharff has not been able to establish that

16  there was discrimination.

17          So they would take information from your

18  deposition and from any other documents that they have about

19  these promotions and how they were awarded, and they would

20  put that into writing.  It might be affidavits of the

21  personnel people or whoever made the decisions about who was

22  selected.  That would put that into writing.  That's what

23  the motion would be.  You would then have a chance to say

24  why their motion should not be granted.

25          How long would you believe that you would need to

1   file an opposition to their motion?  They're making it by

2   March 14th.  You're just getting back to the country.  How

3   much time do you believe you would need?

4          MR. WHARFF:  Within three weeks' time.

5          THE COURT:  I'll give you longer than that, sir.

6   When you get a summary judgment motion, you basically need

7   to go paragraph by paragraph, line by line, and work out

8   what you have that contradicts what they're saying, okay?

9   So we will give you until April 25th.  That's five weeks,

10  okay?

11         Then the reply, if at all, I imagine would be able

12  to come in quite quickly after that, so we will give you

13  until May 12th.  Ms. Spann, did you sense that there would be

14  any further purpose, before the dispositive motion deadline

15  in this case, after discovery, in having another conference?

16  Did you see that there was any possibility with your client

17  to find a negotiated resolution of this case?

18         MS. SPANN:  Frankly, I did not, although I would

19  like to -- in the event that something does arise, I would

20  certainly want to contact the Court and set up something.

21         THE COURT:  Okay.  So then I'm going to leave a

22  status conference open in this case and not put in a next

23  status conference.

24         If I thought that there would be perhaps a

25  willingness to settle this case, Mr. Wharff, I would

1   schedule another status conference after the discovery was

2   closed but before any motion was filed, just to see if we

3   could resolve the case.  But since I'm not sensing that and

4   I don't want to waste your time or my time or Ms. Spann's

5   time -- again, I think you can tell it's not Ms. Spann

6   that's the issue here.

7         MR. WHARFF:  I know.

8         THE COURT:  So if you do get an attorney, sir, and

9   any of these deadlines need to be changed or you want an

10  immediate conference because you've gotten an attorney and

11  your attorney wants to amend the complaint, they will know

12  how to make the application to me.  All of this is not

13  written in stone.  However, it is written in stone to the

14  extent that any deadline that's reflected here is the true

15  deadline, unless there is an application made to me prior to

16  the expiration of that deadline.

17        Any application to me must be made on notice to

18  your adversary, meaning, Mr. Wharff, if you need to get any

19  extension of time, first call to Ms. Spann, see if she will

20  consent to the extension, and then come to me.  Likewise,

21  she will need to go to you if she wants to extend any dates.

22        MS. SPANN:  If I may, please do feel free to call

23  me because I'm usually pretty good about that.

24        MR. WHARFF:  Okay.

25        THE COURT:  I am hopeful that in your review of

1   these documents and talking to people, that you might find

2   some way to get some resolution of this case, but I can't

3   just let this case go fallow.  So I am entering the order

4   with the dates.  And again, Mr. Wharff, if you're able to

5   find an attorney and we need to reconference and resettle

6   this, that will be just fine, okay?

7           MR. WHARFF:  Okay.

8           THE COURT:  With that, is there any further

9   business that the Court needs to address today?

10          MS. SPANN:  Not from the government, your Honor.

11          THE COURT:  Any further business, Mr. Wharff?

12          MR. WHARFF:  No, your Honor.

13          THE COURT:  So you will go down and you will

14  request these forms and information regarding discovery, and

15  you will try to see if you can consult with an attorney

16  regarding this matter, so that they could apprise you of

17  what you should be doing, if they're not willing to take the

18  case, okay?

19          MR. WHARFF:  Okay.

20          THE COURT:  With that, this matter is adjourned.

21  Thank you very much.  If you could stay, my clerk will make

22  a copy of the scheduling order.

23          * * * * * * * * * * * * *

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18      I certify that the foregoing is a correct transcript

19  from the electronic sound recording of the proceedings in

20  the above-entitled matter.

21

22

23

24

25  ELIZABETH BARRON                        April 26, 2005

YORK STATE DEPARTMENT OF HEALTH
dsworth Center
.inical Laboratory Evaluation Program
Empire State Plaza, PO Box 509
Albany, NY 12201-0509

# Laboratory Evaluation Report

February 10, 2004

3782/7095M060
University Hospital of Brooklyn SUNY Downstate
Box 37 – 450 Clarkson Avenue
Brooklyn, NY 11203

**SURVEYED BY:**
Erlinda Lagmay & Anne Fahey

**SURVEY DATE:**
January 26-27 & 29-30, 2004

| DEFICIENCIES | CORRECTIVE ACTION |
|---|---|

### Section 58-1.3(d)

The supervisor shall be on the laboratory premises during all hours in which tests are performed.

P. Cordero, evening shift supervisor, does not meet requirements as a supervisor under Part 58-1.4.

### Section 58-1.9

Where the results of a test have been reported to it by the testing laboratory, the forwarding laboratory shall send a transcript of such report to the physician or other authorized person who requested the test and shall indicate thereon the name of the laboratory actually performing the test.

Report for specimen 04-1353 (HIV-1 RNA) does not indicate the name of the testing laboratory.

### Section 58-1.11(b)(2)(vi)

Each report shall contain the following information:

reports including numerical results shall include normal values, reference intervals, or similar method for identifying abnormal values. Alternative procedures other than reporting these values on the report may be approved by the department.

FK 506 (tacrolimus) reports do not contain a reference range or comments to identify abnormal values.

# STATE OF NEW YORK
## DEPARTMENT OF HEALTH

Wadsworth Center    The Governor Nelson A. Rockefeller Empire State Plaza    P.O. Box 509    Albany, New York 12201-0509

Antonia C. Novello, M.D., M.P.H., Dr.P.H.
*Commissioner*

Dennis P. Whalen
*Executive Deputy Commissioner*

February 10, 2004

Hospital Administrator
University Hospital of Brooklyn SUNY
Downstate
Box 37 - 450 Clarkson Avenue
Brooklyn, NY  11203

Re:  PFI Number:  3782

Dear Hospital Administrator:

We are forwarding under separate cover the deficiency statement to the Laboratory Director for a Plan of Correction.

A copy is enclosed for your information.  If you have any further questions please contact the Clinical Laboratory Evaluation Program at (518) 402-4018 and request to speak to a compliance consultant.

Sincerely,

*Carol Olsen*

Carol Olsen, B.S., MT(ASCP)
Clinical Laboratory Evaluation Program

CO:st
Enc.

FEB 17 04

*Towards getting position*



# ANNOUNCEMENT OF PROFESSIONAL VACANCY

## STATE UNIVERSITY OF NEW YORK · DOWNSTATE MEDICAL CENTER
### 450 CLARKSON AVENUE, BOX 1194; BROOKLYN, NEW YORK 11203

| Department: | Clinical Laboratories | Budget Title: | Th Clinical Laboratory Technologist 1 |
|---|---|---|---|
| Professional Rank: | SL-4 | Descriptive Title: | TH Clinical Laboratory Technologist 1 |
| Salary Range: | $39,312.00-$83,411.00 | Item Number: | Line# 52857 POS# 95067669 |

**Additional Position Information:** Hours of work: 12:00AM to 8:00AM, Days of week: Variable, Hours per week: 37.5

**Brief Description of Duties:** Position will act as an Assistant Supervisor Responsibilities include: Operations of the Clinical Labs in the absence of the Lab Supervisor Adhere to departmental, hospital and governmental regulations Train personnel in the technical methodologies and interpretation of results Oversee day to day laboratory operation Review quality control Timely performance of specimen testing Record and archive test and QC results Maintain inventory and statistics Shift staff atround or assign staff additional duties in order to maintain work flow smoothly Coordinate administrative operations for the laboratories on weekends

**DUTIES AND RESPONSIBILITIES ARE NOT LIMITED TO THE ABOVE POSITION DESCRIPTION**

**Qualifications:** Bachelor's degree in Medical Laboratory Medicine or Biological Science required. ASCP Certification preferred. 5 years minimum supervisory experience in Chemistry and Hematology Laboratories.

**NOTE: PRIORITY CONSIDERATION GIVEN TO RIF AFFECTED EMPLOYEES**

Posting Ref#: B/PR-52857-02

| Persons interested in the above position should submit a resume along with a cover letter (must include Budget Title and Item # ) to: |  | Office of Training & Employment Services Box 1194 450 Clarkson Avenue Brooklyn, New York 11203 |
|---|---|---|

| Closing date for receipt of applications: | |
|---|---|
| Internal Consideration Program: 10/29/02 | Off-campus recruitment: 11/21/02 |

STATE UNIVERSITY OF NEW YORK IS AN EQUAL OPPORTUNITY / AFFIRMATIVE ACTION EMPLOYER



# ANNOUNCEMENT OF PROFESSIONAL VACANCY

## STATE UNIVERSITY OF NEW YORK · DOWNSTATE MEDICAL CENTER
### 450 CLARKSON AVENUE, BOX 1194, BROOKLYN, NEW YORK 11203

| Department: | LABORATORIES-OPD | Job Title: | TH CLINICAL LAB TECH II |
|---|---|---|---|
| Professional Rank: | SL-3 | Descriptive Title: | TH CLINICAL LAB TECH II |
| Salary Range: | $33,980.00-$72,985.00 | Line Number: | Line# 52886 |

**Additional Position Information:**

**Brief Description of Duties:** Assist in supervising Venipuncture and Central Accessioning areas. Perform venipuncture fingerstick specimen collection on inpatients and outpatients in the Outpatient department and at Satellite facilities when necessary, following guidelines in the Laboratory Venipuncture Procedure Manual. Actively participate in Quality Assurance, Continuing Education, and Mandatory Training functions. Participate in training of new personnel and house staff with respect to venipuncture techniques and devices. Interact with Clinicians and Support Staff to resolve Lab Order issues.

**DUTIES AND RESPONSIBILITIES ARE NOT LIMITED TO THE ABOVE POSITION DESCRIPTION**

**Qualifications:** BS in Medical Technology, Biological Sciences or equivalent foreign degree preferred. 3-5 years experience in Venipuncture and Clinical Labs. Phlebotomy Certification ASCP or equivalent preferred.

**NOTE: PRIORITY CONSIDERATION GIVEN TO RIF AFFECTED EMPLOYEES**

Posting Ref#: B/PR-52886-04

| Persons interested in the above position should submit a resume along with a cover letter (must include Job Title and Line # ) to: |  | The Employment Office<br>Box 1194<br>450 Clarkson Avenue<br>Brooklyn, New York 11203 |
|---|---|---|

**Closing date for receipt of applications:**

| Internal Consideration Program: 03/11/04 | Off-campus recruitment: 04/05/04 |
|---|---|

STATE UNIVERSITY OF NEW YORK IS AN EQUAL OPPORTUNITY / AFFIRMATIVE ACTION EMPLOYER



# ANNOUNCEMENT OF PROFESSIONAL VACANCY

## STATE UNIVERSITY OF NEW YORK · DOWNSTATE MEDICAL CENTER
### 450 CLARKSON AVENUE, BOX 1194, BROOKLYN, NEW YORK 11203

| Department: | CLINICAL LABORATORIES-HEMATOLOGY | Job Title: | TH CLIN LAB TECH II |
|---|---|---|---|
| Professional Rank: | SL-3 | Descriptive Title: | TH CLINICAL LAB TECH II |
| Salary Range: | $33,980.00-$72,985.00 | Line Number: | Line# 52886 |

**Additional Position Information:** Hours of work: variable. Days of week: variable. Hours per week: variable.

**Brief Description of Duties:** Coordinate administrative operations for the laboratories in the absence of the laboratory supervisor. Responsible for laboratory's adherence to all departmental, hospital and regulatory requirements. Responsible for maintaining high quality technical work performed in hematology, chemistry, coagulation and urinalysis. Supervision of workflow, quality control, maintenance protocols. Train personnel in the technical methodologies and interpretation of results.

**DUTIES AND RESPONSIBILITIES ARE NOT LIMITED TO THE ABOVE POSITION DESCRIPTION**

**Qualifications:** BS in Medical Technology, Biological Sciences or equivalent foreign degree. 5 years minimum experience as a Medical Technologist in Hematology and Chemistry. Phlebotomy Certification, ASCP registry or equivalent preferred. Meet NYSDOH supervisory requirements.

**NOTE: PRIORITY CONSIDERATION GIVEN TO RIF AFFECTED EMPLOYEES**

Posting Ref#: B/PR-52886-04

| Persons interested in the above position should submit a resume along with a cover letter (must include Job Title and Line # ) to: |  | The Employment Office<br>Box 1194<br>450 Clarkson Avenue<br>Brooklyn, New York 11203 |
|---|---|---|

**Closing date for receipt of applications:**

| Internal Consideration Program: 06/08/04 | Off-campus recruitment: 07/01/04 |
|---|---|

STATE UNIVERSITY OF NEW YORK IS AN EQUAL OPPORTUNITY / AFFIRMATIVE ACTION EMPLOYER

EX. 11



# ANNOUNCEMENT OF PROFESSIONAL VACANCY

## STATE UNIVERSITY OF NEW YORK · DOWNSTATE MEDICAL CENTER
450 CLARKSON AVENUE, BOX 1194, BROOKLYN, NEW YORK 11203

| Department: | CLINICAL LABORATORIES-HEMATOLOGY | Job Title: | TH CLIN LAB TECH II |
|---|---|---|---|
| Professional Rank: | SL-3 | Descriptive Title: | TH CLINICAL LAB TECH II |
| Salary Range: | $33,980.00-$72,985.00 | Line Number: | Line# 52886 |

**Additional Position Information:** Hours of work: variable. Days of week: variable. Hours per week: variable.

**Brief Description of Duties:** Coordinate administrative operations for the laboratories in the absence of the laboratory supervisor. Responsible for laboratory's adherence to all departmental, hospital and regulatory requirements. Responsible for maintaining high quality technical work performed in hematology, chemistry, coagulation and urinalysis. Supervision of workflow, quality control, maintenance protocols. Train personnel in the technical methodologies and interpretation of results.

### DUTIES AND RESPONSIBILITIES ARE NOT LIMITED TO THE ABOVE POSITION DESCRIPTION

**Qualifications:** BS in Medical Technology, Biological Sciences or equivalent foreign degree. 5 years minimum experience as a Medical Technologist in Hematology and Chemistry. Phlebotomy Certification, ASCP registry or equivalent preferred. Meet NYSDOH supervisory requirements.

### NOTE: PRIORITY CONSIDERATION GIVEN TO RIF AFFECTED EMPLOYEES

Posting Ref#: B/PR-52886-04

| Persons interested in the above position should submit a resume along with a cover letter (must include Job Title and Line # ) to: |  | The Employment Office<br>Box 1194<br>450 Clarkson Avenue<br>Brooklyn, New York 11203 |
|---|---|---|

| Closing date for receipt of applications: | |
|---|---|
| Internal Consideration Program: 07/09/04 | Off-campus recruitment: 07/09/04 |

STATE UNIVERSITY OF NEW YORK IS AN EQUAL OPPORTUNITY / AFFIRMATIVE ACTION EMPLOYER



# ANNOUNCEMENT OF PROFESSIONAL VACANCY

## STATE UNIVERSITY OF NEW YORK · DOWNSTATE MEDICAL CENTER
### 450 CLARKSON AVENUE, BOX 1194, BROOKLYN, NEW YORK 11203

| Department: | Clinical Laboratories | Job Title: | TH CLinical Lab Technician I |
|---|---|---|---|
| Professional Rank: | SL-4 | Descriptive Title: | TH CLinical Lab Technician I |
| Salary Range: | $39,312.00-$83,411.00 | Line Number: | Line# 52860 |

**Additional Position Information:**

**Brief Description of Duties:** Position will act as an Assistant Supervisor with responsibility for the supervision of the clinical laboratories in the absence of the Laboratory Supervisor. Adhere to departmental, hospital and governmental regulations. Train personnel in technical methodologies and interpretation of results. Day-to-day laboratory operation. Review quality control. Timely performance of specimen testing. Record and archive test and QC results. Maintain inventory and statistics. Shift staff around or assign additional duties in order to maintain the smooth flow of work. Coordinate administrative operations for the laboratories as needed.

### DUTIES AND RESPONSIBILITIES ARE NOT LIMITED TO THE ABOVE POSITION DESCRIPTION

**Qualifications:** Bachelor's degree in Medical Laboratory Medicine or Biological Science required. ASCP Certificate or equivalent preferred. Five years minimum supervisory experience in Chemistry and Hematology laboratories.

### NOTE: PRIORITY CONSIDERATION GIVEN TO RIF AFFECTED EMPLOYEES

Posting Ref#: B/PR-52860-04

| Persons interested in the above position should submit a resume along with a cover letter (must include Job Title and Line # ) to: |  | The Employment Office<br>Box 1194<br>450 Clarkson Avenue<br>Brooklyn, New York 11203 |
|---|---|---|

| Closing date for receipt of applications: | |
|---|---|
| Internal Consideration Program: 03/09/04 | Off-campus recruitment: 04/05/04 |

STATE UNIVERSITY OF NEW YORK IS AN EQUAL OPPORTUNITY / AFFIRMATIVE ACTION EMPLOYER

Table of Contents

1. US EEOC Dismissal and Notice of Rights

2. Complaint by Plaintiff to the State Division of Human Rights

3. Defendant's Response

4. Plaintiff's Response to the Defendant's Response

5. Determination and Order after Investigation by SDHR

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Wilfred Wharff**
    **794 Midwood Street**
    **Brooklyn, NY 11203**

From: **New York District Office**
      **33 Whitehall Street**
      **5th Floor**
      **New York, NY 10004**

[ ] *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16G-2003-03234** | **Holly M. Woodyard,**<br>**Investigator** | **(212) 336-3643** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[ ] Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ] While reasonable efforts were made to locate you, we were not able to do so.

[ ] You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice;** or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____
**Spencer H. Lewis, Jr.,**
**Director**

JUL 29 2005

_____
*(Date Mailed)*

Enclosure(s)

cc: **STATE UNIVERSITY OF NEW YORK;**
    **HEALTH SCIENCE CTR.**
    **State University Plaza**
    **Albany, NY 12246**
    **Attn: Director of Human Resources**

STATE OF NEW YORK
EXECUTIVE DEPARTMENT
DIVISION OF HUMAN RIGHTS
55 HANSON PLACE---ROOM 304
BROOKLYN NY 11217.


Wilfred Wharff                    Complainant

       -against-


State University of New York        Respondent
Health Science Venter at Brooklyn


Title V11: Federal Charge

### RE: Hiring of Mr. Pedro Codero January 16th 2003

I, Wilfred Wharff, residing at 794 Midwood Street. Brooklyn, NY11203, Tel. # (718) 493
7775 H, (718) 240 5526 W, charge the above-name Respondent whose address is State
University Plaza, Albany, NY 12246 Tel. (518) 443 5400/ 450 Clarkson Ave. Brooklyn
NY 11203, Tel. # (718) 270 2977 with unlawful discriminatory practice relating to
Employment in violation of the Executive Law of the State of New York (Human Rights
Law) because Race and Origin

The particulars are as follows:

1. I am West Indian by birth (Trinidad W.I).
2. I was hired by Respondent July 26th 1984, in the position of Laboratory
   Technologist111. My work performance and attendance has been satisfactory.
3. On or about May 30th 2002 I observed another posting of a vacant position for
   Tech 1 which expired on or about June 7th 2002, for internal applicants and June
   30th for off-campus applicants.(4 pm---12am shift). To the best of my knowledge
   three employees tendered resume for the position (i.e. Mr. Khan Ph:D, Ms.
   Modafferri a recent graduate B.S. and Wilfred Wharff B.S. MSA.)
4. Complainant did applied for the position within the time frame
5. Complainant in the absence of assistant supervisor on four occasions assumed the
   responsibilities and served as senior Tech (assistant supervisor) on each occasion
   but was never given credit for my work performance.

6. On or about August 6th and 7th 2002 all three of us were interviewed by a panel that comprises two supervisors and two assistant supervisors.

7. On or about November 26th 2002 I was subject to a second interview with Dr. Joan Howanitz, and Mr. Alix Laguerre associate Lab Administrator.

8. On or about January 16th 2003 I was informed that Mr. Pedro Codero a retired employee of KCHC was awarded the position.

9. The second interview was a camouflage. Mr. Codero was hired on or about September 2002.

10. It is my belief that Mr. Codero was allowed to tender a resume after the deadline date in order to deny me the position.

11. To the best of my knowledge Mr. Codero and Ms. Maria Mendez are both Spanish speaking from the Island of Puerto Rico and that she played a major role in his employment as assistant supervisor.

12. Complainant is more senior, better qualified, better experience, better knowledge of the instruments than Mr. Codero. As a matter of fact complainant as of 7/28/03 is training Mr. Codero to efficiently operate the instruments. Mr. Codero is still grouping.

13. Complainant was denied the position because of charges brought against Respondent at SDHR and a pending matter in the United States District Court Brooklyn NY 11201.

14. Complainant had requested UUP to investigate and seek clarification on Mr. Codero's hiring as well as his qualifications but as of 7/28/2003 Respondent has failed to furnish the required information.(Exhibit1)

15. Based on the foregoing, I charge the above named Respondent with denying me equal terms, conditions and privileges of employment and denial of opportunity of employment for promotion because of race origin and retaliation for filing prior discriminatory charges in violation of the Human Rights Laws of the State of New York.

Respecfully

Wilfred Wharff BS MSA

Date 7/29/03


STATE OF NEW YORK
COUNTY OF KINGS


Wilfred Wharff, being duly sworn, deposes and says: that he is the Complainant herein, and the complaint and content thereof, are true to the best of his knowledge.

Wilfred Wharff

_____
Complainant

Subscribed and sworn to before me
This __3/____ day of July, 2003.

_____ x
Signature of Notary Public

**SYLVIA AYALON**
**NOTARY PUBLIC, State Of New York**
**No. 01AY4739733**
**Qualified In Kings County**
**Commission Expires April 30, 2007**

CERTIFIED MAIL#70001670000836316701

# nysut

**New York State United Teachers**

*Affiliated with the American Federation of Teachers, AFL-CIO
Representing teachers and other professionals, school-related personnel,
higher education professionals, health care professionals, and retirees*

May 15, 2003

Mr. David Pappalardo
Director of Labor Relations
SUNY Downstate
410 Lenox Road
Brooklyn, New York 11203

Dear Mr. Pappalardo:

United University Professions (UUP) has recently received a letter from UUP member, Mr. Wilfred Wharff.

Mr. Wharff has raised some concerns regarding the hiring, recruitment and promotion system within the Clinical Laboratory. Specifically, he has requested that the Union investigate a "Tech I" position posted in May 2002.

The Union is requesting that your office conduct an investigation regarding the "Tech I" position. At Mr. Wharff's request, I am asking for clarification of the following:

(a) A copy of the position displaying the closing date.
(b) How many applicants applied for said position?
(c) When did the successful applicant apply for said position?
(d) How many applicants were interviewed?
(e) Who conducted the interviews?
(f) When was the application of the successful applicant approved?

Please inform me of the outcome of your investigation.

Thank you in advance.

Sincerely,

Lisa Willis
Labor Relations Specialist

LW:db
cwa 1141
cc: Rowena Blackman-Stroud, UUP Chapter President
Wilfred Wharff

Thomas Y. Hobart, Jr., *President*

Alan B. Lubin, *Executive Vice President* • Antonia Cortese, *First Vice President* • Walter E. Dunn, Jr., *Second Vice President* • Ivan Tiger, *Secretary-Treasurer*



# THE STATE UNIVERSITY *of* NEW YORK



July 9, 2004

Joseph H. Kaufman, Regional Director
NYS Division of Human Rights
55 Hanson Place, Room 304
Brooklyn, New York  11217

*Office of the*
*University Counsel*

*State University Plaza*
*Albany, New York*
*12246*

*518 443 5400*
*fax - 518 443 5409*

Re:   <u>Wilfred Wharff v. SUNY Health Science Center at Brooklyn</u>
<u>(Downstate Medical Center)</u>
SDHR NO:  1D-E-N-03-5806720-E

Dear Mr. Kaufman:

　　　Please accept this letter as the State University of New York,
Health Science Center at Brooklyn's (Downstate Medical Center)
(hereinafter referred to as "SUNY DMC" or "Respondent") response to
the above referenced Complaint.

## Response by paragraph:

1.　　　With respect to the allegations contained in paragraph 1 of
the Complaint, Respondent acknowledges that, according to
records on file at the SUNY-DMC Department of Human
Resources, the Complainant was born in Trinidad, West Indies.

2.　　　With respect to the allegations contained in paragraph 2 of
the complaint, Respondent acknowledges that it hired the
complainant on July 26, 1984. Respondent denies that the
complainant was hired as a Technologist III, and affirmatively
states that the Complainant was hired as a Technical Specialist
in the Department of Pathology. The Complainant's current title
is Teaching Hospital Clinical Laboratory Technologist III ("Tech
III"). The Respondent acknowledges that the Complainant's
performance and attendance have been generally satisfactory.

3.　　　With respect to the allegations contained in paragraph 3 of
the Complaint, Respondent denies knowledge or information
sufficient to admit or deny whether or when the Complainant

1

RECEIVED

AUG 1 3 2004

REGIONAL OFFICE

saw the posting he refers to in this paragraph. Respondent affirmatively states that a posting for the position of Teaching Hospital Clinical Laboratory Technologist III did indicate expiration dates of June 7, 2002 for internal applicants and June 30, 2002 for external applicants. (See attached at **Exhibit A**). Five candidates – not three, as alleged by the Complainant – initially applied for the position. The applicants, in addition to the Complainant, were Mohammad T. Khan, Laura Modafferi, and two external candidates.

4.     With respect to the allegations contained in paragraph 4 of the Complaint, Respondent acknowledges that the Complainant applied for this position within the posting time guidelines.

5.     With respect to the allegations contained in paragraph 5 of the Complaint, Respondent denies the paragraph and affirmatively states that over the past few years, on several occasions when the evening shift assistant supervisor has been absent, the Complainant has served as the senior Tech on that shift. As the senior Tech on those occasions, he acted in the capacity of an assistant supervisor. Respondent denies knowledge or information sufficient to admit or deny the particular number of occasions and dates when he acted in such a capacity.

6.     With respect to the allegations contained in paragraph 6 of the Complaint, Respondent acknowledges that the Complainant and each of the other applicants were interviewed in August 2002 by two supervisors (the Chemistry Laboratory supervisor and the Hematology Laboratory supervisor), and by at least two assistant supervisors.

7. .     With respect to the allegations contained in paragraph 7 of the Complaint, Respondent denies the allegations and states that after the initial screening of applicants, lab managers could not agree on a candidate. The application process was therefore reopened to field additional candidates, and Mr. Pedro Cordero,

*[handwritten margin notes: "who were the lab managers that day? what was the disagreement? who won, the candidate this, they had the agreement" and "This is false"]*

2

an external candidate, applied. The interviewing panel thereafter recommended that two candidates be interviewed by the Chemistry and Hematology Lab Directors, and by the Lab Administrator. Respondent acknowledges that the Complainant was interviewed pursuant to this recommendation by Dr. Joan Howanitz, the Director of the Chemistry Laboratory, and by Alix Laguerre, the Clinical Laboratory Associate Administrator, in November 2002. Although the Complainant was also supposed to be interviewed by the Director of the Hematology Lab, the Complainant failed to appear for his interview as scheduled. The other recommended candidate, Mr. Pedro Cordero, was also interviewed by the Directors as well as by Mr. Laguerre.

8.      With respect to the allegations contained in paragraph 8 of the Complaint, Respondent denies knowledge or information as to when or how the Complainant was informed that Mr. Cordero had been appointed to the position. Respondent states that Mr. Pedro Cordero was hired for the position effective January 16, 2003.

9.      With respect to the allegations contained in paragraph 9 of the Complaint, Respondent denies that the second interview of the Complainant was "camouflage", and further denies that Mr. Cordero was hired in September 2002.      _important_

10.     With respect to the allegations contained in paragraph 10 of the Complaint, Respondent denies that Mr. Cordero was allowed to submit a late resume in order to deny the Complainant the position.  The sole purpose of the selection process was to choose the best qualified candidate for the position.

11.     With respect to the allegations contained in paragraph 11 of the Complaint, Respondent denies the paragraph but acknowledges that both Mr. Cordero and Ms. Maria Mendez (Senior Associate Administrator for Ancillary Services) are Spanish speaking and Puerto Rican. Respondent denies that Ms.

3

Mendez played any role in the selection process beyond that of approving the recommendation of the interviewing panel (none of whom were Puerto Rican) that Mr. Cordero was the best qualified candidate. Ms. Mendez was not involved in the interviewing process and first learned that Mr. Cordero was selected only when the recommendation was presented to her. *Language and national origin were not considered by the interviewing panel or by Ms. Mendez.*

12.     With respect to the allegations contained in paragraph 12 of the Complaint, Respondent denies that the Complainant is better qualified or more experienced in the areas relevant to the position than Mr. Cordero. (The Complainant's resume is attached at **Exhibit B**). In fact, Mr. Cordero had the most experience and expertise at a supervisory level in Hematology, Chemistry and Central Receiving, than the Complainant. (Mr. Cordero's resume is attached at **Exhibit C**). While the Complainant had seniority at SUNY-DMC, management was not obligated to hire an internal candidate when a superior external candidate was available for hire. The Complainant had no recent Hematology experience, whereas Mr. Cordero had significant experience in all three areas sought by the Respondent. (See attached at **Exhibit D**). Respondent denies the remainder of the paragraph.

13.     With respect to the allegations contained in paragraph 13 of the Complaint, Respondent denies that the Complainant's legal actions brought in federal court and at the State Division of Human Rights (See, *No Probable Cause* finding in Charge number: 1D-E-S-99-5804128-E) in any way contributed to the decision to hire Mr. Cordero for the position rather than the Complainant or other candidates.

14.     With respect to the allegations contained in paragraph 14 of the Complaint, Respondent has denies knowledge or information sufficient to admit or deny whether the Complainant requested his union to "investigate and seek clarification on Mr.

Cordero's hiring as well as his qualifications." Respondent also denies knowledge or information sufficient to admit or deny whether it "failed to furnish the required information" (the referenced "Exhibit 1" was not supplied to Respondent with the Complaint).

15.     With respect to the allegations contained in paragraph 15 of the Complaint, Respondent strongly denies that it has discriminated against the Complaint and further strongly denies that it has denied the Complainant equal terms and conditions, and privileges of employment because of his race, national origin or in retaliation for his having brought prior discrimination charges against the Respondent.   Respondent strongly denies that it has violated any of the provisions of the NYS Human Rights Law.   The successful candidate was chosen solely on merit as the best qualified applicant.

16.     Respondent denies all allegations in the Complaint not previously responded to.

**Narrative Response**:

As set forth above, it is apparent that no discrimination occurred here. The Complainant has offered no evidence to support his allegations that Mr. Cordero is not qualified for the position. As indicated, the Complainant was not selected for the position because he had no recent hematology experience. Additionally, he was not the interview committee's first choice. (See, **Exhibit D**). Mr. Cordero had the most experience and expertise at a supervisory level in Hematology, Chemistry and Central Receiving, than the Complainant. (Mr. Cordero's resume is attached at **Exhibit C**). Mr. Cordero had significant experience in all three areas sought by the Respondent.

Nor has the Complainant offered any evidence at all to support his conclusory allegations of retaliation (paragraph 13). In fact, the Complainant continues to be employed by the Respondent with no adverse actions taken against him. Additionally, the Complainant has offered no evidence whatsoever to support his claims of discrimination

based on race or national origin.  The Respondent had legitimate, good faith and nondiscriminatory reasons for its actions in that it appointed the best qualified candidate for the position.

**Conclusion:**

Based on the foregoing, it is respectfully requested that the Division dismiss the Complaint forthwith. It is apparent that no discrimination occurred against the Complainant by SUNY DMC.

Please do not hesitate to contact me if you require any further information or have any questions. Your kind attention to this matter is appreciated.

Very truly yours,

Janna Pfluger-Boucher
Associate Counsel

Copy: Michael Brennan

6

Case 1:05-cv-04780-MKB-LB   Document 1   Filed 10/11/05   Page 62 of 72 PageID #: 64

Pers. Req. No.

| Line Number | Official Title and Salary Grade | | VACANCY NO. |
|---|---|---|---|
| 52847 | TH CLIN LAB TECH I | SL-4 | BKLR-52847-02 |

| ctional Code/Grant No. | Department/Project Name | Supervisor/Project Director |
|---|---|---|
| 351329 | Clinical Laboratories | Pervez Mirza |

**Funding:** 1)☐ State Funds Regular 2)☐ State Funds-Temporary Service 2a)☐ State Funds-Temporary Service Pending No: _____

3)☐ Income Fund Reimbursable 4)☐ Research Foundation 5)☐ Other (specify) _____

| | | | |
|---|---|---|---|
| ☐ First Apptmt. to Position | Name of Previous Incumbent | Back-up Line Number for Promotion or IFR or Temporary Service position if greater than six (6) months duration. | Personnel Status Initial/Change ☐ Form or Research Foundation PAF Form attached or previously submitted |
| ☐ Replacement | Syed Humayun | | |
| **Type of Appointment:** | | | |
| [Classified] ☐ No Stated Limit ☐ Temporary Until _____ | | | Hours of work: AM to Variable AM |
| [NTP etc.] ☐ Term _____ ☐ Temporary Until _____ | | | PM PM |

| Desired Starting Date | Salary/Wage ☐ Annual ☐ Weekly ☐ Hourly | To be interviewed by | Pervez Mirza | Days of Week Variable |
|---|---|---|---|---|
| | | Location of Interview: | A2-430 | Hours per week: Variable |
| | | Telephone extension: | 2696/6125 | |

**QUALIFICATION REQUESTED**

Indicate minimum education, training, work experience, etc., required:

Bachelors degree in Medical Laboratory Medicine or Biological science required.  ASCP
Certification perferred.  Five years minimum supervisory experience in Chemistry and
Hematology Laboratories.

**DESCRIPTION OF POSITION TO BE FILLED**

To help in recruiting for this position, describe briefly the duties and responsibilities. Continue on a separate sheet, if additional space is required:

The assistant supervisor ~~is in charge of the~~ will be responsible for the operations of the clinical
laboratories in the absence of the Laboratory Supervisor
Adhere to departmental, hospital, and governmental regulations.
Train personnel in technical methodolgies and interpretation of results.
Day to day laboratory operation.
Review quality control
Timely performance of specimen testing.
REcording and archive test and QC results.
Maintain inventory and statistics.
Shift staff around or assign staff additional duties in order to maintain work flow smoothly.
Coordinate administrative operations for the laboratories on weekends.

**SIGNATURES AND APPROVALS REQUIRED**

| Unit Supervisor/Project Director (Research Foundation) Date | Department Head | Date | Additional Approval (as required) | Date |
|---|---|---|---|---|
| | a. Ix | 6/19/02 | | |

| Vice Presidential Approval | Date | If back up line number is required and not shown above, Vice President is agreeing to (specific details): |
|---|---|---|
| A. Carrero | 5/29/02 | |

**THIS SECTION IS FOR THE USE OF THE OFFICE OF PERSONNEL:**  Date Personnel Requisition received:

| Position Title | Line No. | Pos Title Code | Salary Grade | Salary/Wage Range | ☐ Annual ☐ Weekly ☐ Hourly |
|---|---|---|---|---|---|
| TH Clin Lab Tech I | 52847 | 3744661 | SL-4 | 37,982 to 89590 | ☒ Annual |

| FUNDING: ☒-1  ☐-2  ☐-2a  ☐-3  ☐-4 ☐-5 (specify) _____ | Approval to Recruit KK | Date 5/30/02 |
|---|---|---|

| Reason for earmark, if necessary | Name of Candidate Selected | Starting Date |
|---|---|---|
| FLSA: Ineligible | | |

Grants Management Office Remarks and Approval:  POS # 95023503

MC Form P10 (11/80)   SOP#15A - TH CLIN LAB TECH I - SL-4

*Wednesday*

# WILFRED D. WHARFF
794 Midwood Street, Suite 6C   *4:30 P.m*
Brooklyn, N.Y. 11203
e-mail: WWharff@aol.com
*240-5526.*

**EDUCATION:**  **CENTRAL MICHIGAN UNIVERSITY**, Mount Pleasant, MI
M.S.A., Health Service Administration, 1988

**COLLEGE OF STATEN ISLAND**, Staten Island, NY
B.S., Chemistry/Medical Laboratory Technology, 1982

**EXPERIENCE:**  **DOWNSTATE MEDICAL CENTER,** Brooklyn, NY
*Medical Technologist III (Grade 2):*          7/1984-Present
Perform routine clinical testing and analysis of specimens submitted from various
departments of the hospital. Assist Chief Laboratory Technician in all
administrative aspects of the department. Collect data and make statistical
analysis of all tests that are performed by the laboratory. Submit data to various
department heads when requested. Perform Blood Gas analysis, Blood and
Pregnancy (BHCG), Urine Test, and Routine Chemistry, and Perform special
chemistry, such as FK506.

**BROOKDALE MEDICAL CENTER**, Brooklyn, NY
*Senior Veni-Puncture Technician (Phlebotomist)*          9/1981-Present
Perform Endocrinology, Diagnostic Immunology, Hepatitis, Anti-HIV screening,
Clinical Chemistry, Urinalysis, Therapeutic Drug Monitoring. Responsible for
expediting results after they are reviewed and verified. Experience with Atomic
Absorption processes

**PUBLISHERS DIST. CORP.**, New York, NY
*Assistant Supervisor, (Accounts Receivable and Payable)*          10/1970-9/1978

**MINISTRY OF PLANNING& DEVELOPMENT**, Trinidad, WI
*Senior Clerk.*          2/ 1965-9/1970

**SKILLS:**  Literate in French and Latin. Proficient in the following programs: Hepatitis BS
AG Confirmation, Anti-HIV WB Confirmation, LEAD. Maintain and operate
various instruments, such as  VITROS 950 and 250, AXYM, IMX, TDX, NOVA
and Radiometer Blood Gasses, QM 300, EXL50, BXL 80, IMMULITE,
ACCESS, COMMANDER, LABO Tech, and HELENA-Rep. Microsoft Word.

**ACTIVITIES:**  Delegate for Local Union 1199. Amateur videography and photography. Player
in various Soccer Leagues. Knowledge and participation in equestrian sports, and
training of thoroughbred horses. Traveling, and participator in various marathons
and walks in support of the cure for breast cancer.

**REFERENCES:**  Furnished upon request



# ANNOUNCEMENT OF
# Professional Vacancy

## STATE UNIVERSITY OF NEW YORK • DOWNSTATE MEDICAL CENTER
### 450 CLARKSON AVENUE, BOX 1194, BROOKLYN, NEW YORK 11203

Applications are invited for consideration for appointment to the following position:

| | | | |
|---|---|---|---|
| **Campus:** | SUNY Downstate Medical Center | **Budget Title:** | TH CLIN LAB TECH I |
| **Department:** | Clinical Laboratories | **Descriptive Title:** | TH CLIN LAB TECH I |
| **Professional Rank:** | SL-4 | **Item Number:** | POS# 95023503  Line # 52847 |
| **Salary Range:** | $37,982.00-$80,590.00 | **Date To be Filled:** | ASAP |

**Additional Position Information:** FLEXIBLE DAYS AND HOURS

**Brief Description of Duties:**

The assistant supervisor will be responsible for the operations of the clinical laboratories in the absence of the Laboratory Supervisor

Adhere to departmental, hospital, and governmental regulations

Train personnel in technical methodologies and interpretation of results

Oversees day to day laboratory operation

Review quality control

Timely performance of specimen testing

Records and archive test and QC results

Maintain inventory and statistics

Shift staff around or assign staff additional duties in order to maintain work flow smoothly

Coordinate administrative operations for the laboratories on weekends

**DUTIES AND RESPONSIBILITIES ARE NOT LIMITED TO THE ABOVE POSITION DESCRIPTION**

**Qualifications:** Bachelors degree in Medical Laboratory Medicine or Biological science required. ASCP Certification preferred. Five years minimum supervisory experience in Chemistry and Hematology Laboratories

### NOTE: PRIORITY CONSIDERATION GIVEN TO RIF AFFECTED EMPLOYEES

B/PR-52847-02

**Persons interested in the above position should submit a resume along with a cover letter (must include Budget Title and Item # ) to:**



## Office of Training & Employment Services
### Box 1194
### 450 Clarkson Avenue
### Brooklyn, New York  11203

Closing date for receipt of applications:

| | |
|---|---|
| Internal Consideration Program: 06/07/02 | Off-campus recruitment: 06/30/02 |

SUNY IS AN EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER



# ANNOUNCEMENT OF PROFESSIONAL VACANCY

## STATE UNIVERSITY OF NEW YORK · DOWNSTATE MEDICAL CENTER
### 450 CLARKSON AVENUE, BOX 1194, BROOKLYN, NEW YORK 11203

| Department: | Clinical Laboratories | Budget Title: | TH CLIN LAB TECH I |
|---|---|---|---|
| Professional Rank: | SL-4 | Descriptive Title: | TH CLIN LAB TECH I |
| Salary Range: | $37,982.00-$80,590.00 | Item Number: | Line# 52847 POS# 95023503 |

**Additional Position Information:** FLEXIBLE DAYS AND HOURS

**Brief Description of Duties:** The assistant supervisor will be responsible for the operations of the clinical laboratories in the absence of the Laboratory Supervisor Adhere to departmental, hospital, and governmental regulations Train personnel in technical methodologies and interpretation of results Oversees day to day laboratory operation Review quality control Timely performance of specimen testing Records and archive test and QC results Maintain inventory and statistics Shift staff around or assign staff additional duties in order to maintain work flow smoothly Coordinate administrative operations for the laboratories on weekends

**DUTIES AND RESPONSIBILITIES ARE NOT LIMITED TO THE ABOVE POSITION DESCRIPTION**

**Qualifications:** Bachelors degree in Medical Laboratory Medicine or Biological science required. ASCP Certification preferred. Five years minimum supervisory experience in Chemistry and Hematology Laboratories

**NOTE: PRIORITY CONSIDERATION GIVEN TO RIF AFFECTED EMPLOYEES**

Posting Ref#: B/PR-52847-02

| Persons interested in the above position should submit a resume along with a cover letter (must include Budget Title and Item # ) to: |  | Office of Training & Employment Services Box 1194 450 Clarkson Avenue Brooklyn, New York 11203 |
|---|---|---|

### Closing date for receipt of applications:

| **Internal Consideration Program:** 06/07/02 | **Off-campus recruitment:** 06/30/02 |
|---|---|

STATE UNIVERSITY OF NEW YORK IS AN EQUAL OPPORTUNITY / AFFIRMATIVE ACTION EMPLOYER

RECEIVED

AUG 1 3 2004

BROOKLYN OFFICE IS

February 28, 2005

Wilfred  Wharff          Complainant

-against-

State University of New York   Respondent
Health Science Center at Brooklyn

SDHR NO: 1D-E-N-03-5806720-E

Ms. Roxana C. Sosa-Human Rights Specialist 1
NYS Division of Human Rights
55 Hanson Place
Brooklyn New York 11217

Dear Ms. Sosa:

Complainant hereby responds to statements contained in Respondent's letter dated July 9, 2004 as follows:

Paragraph 2-Complainant acknowledges that he was hired on July 26, 1984 as a Technical specialist and at some point in time Respondent change all Technical Specialist to Technologist 1, Technologist 11, or Technologist 111. However, the status is the same. (I.e Salaries, duties, responsibilities ect.did not change).

Paragraph 3-Complainant clearly stated **to the best of his knowledge three employees tendered resume for the position.** They were Mr. Mohammad T. Khan, Ms. Laura Modafferi and Complainant (internal applicants). As a matter of fact Complainant was the last internal applicant to tender his resume. The position was not posted on 6/06/02 as shown on Exhibit 1 (Exhibit 2 was the original posting—no posting date was indicated and it continues to happen). This was done with the intention to limit and deny better qualified internal applicants from applying for the position (including Complainant). Complainant confronted the Laboratory Administrator Mr. La Guerre concerning the vacancy that was obscured from view. Complainant was allowed to tender his resume after the internal consideration date 06/07/02.

On or about August 6 and 7, 2002, all three internal applicants were interviewed by two supervisors and two assistant supervisors. On or about August 6, 2002, Complainant learnt that two applicants were interviewed for the position. However, Complainant did inquire as to when he would be interviewed (do not recall whom I spoke to at that time). However, later on that evening (Complainant works 4:30pm-12:30 am) Complainant was informed by Secretary Ms. Jones that my resume has been misplaced or lost and that I must bring in a copy. Complainant did comply and was the last internal applicant to be interviewed.

Paragraph 5-Complainant stands terra firma on statement made in paragraph 5. (Will elaborate at the appropriate time). This had been discussed at the SDHR and at the present pending matter at the U.S Eastern District Court at Brooklyn.

Paragraph 7-Complainant is not cognizant of a disagreement among managers on a candidate. Nevertheless, to the best of Complainant's knowledge at no time there was a reposting of the vacant position to field additional candidates as stated by Respondent. The true facts of this matter are:

1.  On or about September 8, 2002, Complainant and Respondent (represented by Assistant Attorney General Ms. Kathryn Spann) appeared before the Honorable Judge Lois Bloom at one point I, Complainant informed the Honorable Judge I applied for a vacant position and was interviewed. To the best of my recollection the Judge asked the Assistant Attorney General if she aware or knew of the vacancy and if anyone was hired for the position. The Assistant Attorney General responded in the affirmative. The Judge continued by asking the Assistant Attorney General Ms. Spann if she had any knowledge whether the successful applicant was a male or female and her response was that she had no knowledge of the sex that was hired.

2.  Complainant acknowledged that he did missed an interviewed with Dr. Goottesman (one of the three interviewers) because Complainant misunderstood the directive to me by secretary (Juliette). However, I was advised by Mr. La Guerre to reach out to Dr. Gottesman. When I did get in contact with Dr. Gottesman her manner and tone of voice was obnoxious. She stated to the best of my recollection that she had no time and as far as she was concern the matter was over and abruptly put down the phone on me. I reported the matter the following day to the laboratory Administrator Mr. La Guerre who stated that Dr. Gottesman speaks to him in a similar manner but he ignores her.

Paragraph 8-Mr. Pervez Mirza Supervisor informed the evening staff including Complainant that Mr. Cordero a retired employee from KCHC was awarded the position. As a matter of fact Respondent violated the agreement between union and SUNY at Brooklyn by not informing all non selected applicants in writing of their non selection (Exhibits 3, 3A)

Paragraph9-If someone was hired on or about September 2002 what was the reason for a second interview.

Paragraph 10-Complainant learnt through discovery that Mr. Cordero tendered his Resume on or about November 13, 2002. (Exhibit 4)

Paragraph 11-Ms. Mendez did play a pivotal in Cordero's hiring. He was not the only Puerto Rican or Spanish speaking employee that she assisted in obtaining higher or upgraded positions even though not the best qualified. (E.g. Ms. Alfaro, Mr. Torres , Mr.Burrios and Mr.Belgrave)

Paragraph 12-Mr Cordero was not the better candidate for the position as stated by Respondent. The State of New York Department of Health Report dated February 10, 2004 page 1(Exhibit 5) ipse dixit. (Speaked for itself). It is abundantly clear that although the state Department of Health rejected Mr. Cordero as unqualified to be supervisor, Respondent is obstinate and unwilling to accept that fact. Mr. Cordero was finally replaced in December 2004 by a female employee. Complainant will be filing another discriminating charge at the appropriate time.

Paragraph 13-Complainant stands firmly by the statement he made in paragraph 13 and will elaborate and elucidate the matter at the appropriate time.

Paragraph 14-Compplainant stands firmly by statement he made in paragraph 14 and again declares it true and correct. A copy of the exhibit was attached. However, Complainant was able to obtain the information through discovery.

Paragraph 15- Respondent did deny Complainant equal terms, conditions and privileges of employment denial of opportunity of employment for promotion because of race, origin, qualification, education, seniority, and retaliation for filing prior discriminatory charge in violation of the Human Rights Laws of the State of New York and a pending matter in the Federal Court

### Conclusion

Respondent has not proffered or articulated a legitimate, nondiscriminatory or non-pretextual explanation for its actions. Complainant has clearly established a prima facie case of discrimination. There is cause for action. This matter should not be dismissed.

Respectfully,

Wilfred Wharff BS, MSA.

N.B 1. Complainant is requesting a copy of all exhibits Respondent has stated in its response dated July 9,2004.

2.An exhibit attached to Respondent's response bears the name Syed Humayun.

3. The cover letter of Complainant Resume is missing.

Thank you for your co-operation.

Respectfully,

Wilfred Wharff BS MSA.
794 Midwood St. #6C
Brooklyn, NY 11203

STATE DIVISION OF HUMAN RIGHTS
STATE OF NEW YORK: EXECUTIVE DEPARTMENT

STATE DIVISION OF HUMAN RIGHTS
on the Complaint of

WILFRED WHARFF

                 Complainant

     v.

STATE UNIVERSITY OF NEW YORK; HEALTH
SCIENCE CENTER AT BROOKLYN

                 Respondent

DETERMINATION AND
ORDER AFTER
INVESTIGATION

Case No.
5806720

Federal Charge No. 16GA303234

On 8/5/2003, Wilfred Wharff filed a verified complaint with the
State Division of Human Rights charging the above-named
respondent with an unlawful discriminatory practice relating to
employment because of race/color, opposed
discrimination/retaliation and national origin, in violation of
the Human Rights Law of the State of New York.

After investigation, and following opportunity for review of
related information and evidence by the named parties, the
Division of Human Rights has determined that there is NO
PROBABLE CAUSE to believe that the respondent has engaged in or
is engaging in the unlawful discriminatory practice complained
of. This determination is based on the following:

Complainant alleges that respondent did not promote him to the
position of Clinical Laboratory Technician I [One], which he
applied for and was interviewed on two occasions. Complainant
alleges that respondent hired a former employee, Pedro Codero
(non Black and Puerto Rican), for the position. He claims that
Codero was not qualified for the job and adds that such decision
to hire him was due to favoritism on behalf of respondent's
agent, Maria Mendez, who is also Puerto Rican. Complainant
further alleges that respondent's refusal to promote him to the
above-mentioned position was in retaliation for his filing prior
complaints with the Division as well as filing a law suit
against respondent in District Court.

Respondent denied that it violated the New York State Human
Rights Law.

Page 1 of 3

The evidence gathered during the course of the investigation, is not sufficient to support the complainant's allegations of disparate treatment based on his race/color and national origin. Additionally, it cannot be revealed that respondent did not promote complainant to the position he applied for out of retaliation for filing prior complaints with the Division and a law suit in District Court.

The respondent contends that its decision not to hire the complainant for the position of Clinical Laboratory Technician I was due to his lack of recent hematology experience. The respondent also stated that the interviewing committee recommended Mr. Codero, whom they thought was the best candidate for the position. It is the respondent's position that Maria Mendez "did not play any role in the interviewing process" and that she only accepted the candidate with the highest rating.

Investigation cannot conclude that respondent did not hire/promote complainant because of his race/color and national origin. The investigation confirms that Mr. Cordero had more experience expertise in the areas that respondent was seeking for the job title of Clinical Laboratory Technician I [One]. Consequently, he was considered a superior external candidate in comparison to the complainant and the two other internal candidates. The investigation revealed that two other internal candidates, who are both non-Black and non Hispanic, were also rejected of the position. This belies the complainant's assertion that his national origin and race/color were the reasons for his rejection for the position.

Complainant has failed to substantiate his allegation of retaliation based on his filing prior complaints with the Division and a law suit in District Court. Without proof of such charges, complainant's contention remains merely speculative. Moreover, complainant did not suffer any negative actions as a result of filing his law suit and he remains employed with respondent to date.

Based on the foregoing analysis, I find No Probable Cause to support this complaint. The complaint is therefore ordered dismissed and the file is closed.

PLEASE TAKE NOTICE that any party to this proceeding may appeal this Determination to the New York State Supreme Court in the County wherein the alleged unlawful discriminatory practice took place by filing directly with such court a Notice of

Petition and Petition <u>within sixty (60) days after service of
this Determination</u>. A copy of this Notice and Petition must
also be served on all parties including General Counsel, State
Division of Human Rights, One Fordham Plaza, 4th Floor, Bronx,
New York 10458. DO NOT FILE THE ORIGINAL NOTICE AND PETITION
WITH THE STATE DIVISION OF HUMAN RIGHTS.

PLEASE TAKE FURTHER NOTICE that a complainant who seeks
state judicial review and who receives an adverse decision
therein, may lose his or her right to proceed subsequently in
federal court by virtue of <u>Kremer v. Chemical Construction Co.</u>,
456 U.S. 461 (1982).

Your charge was also filed under Title VII of the Civil
Rights Act of 1964. Enforcement of the aforementioned law(s) is
the responsibility of the U.S. Equal Employment Opportunity
Commission (EEOC). You have the right to request a review by
EEOC of this action. To secure review, you must request it in
writing, within 15 days of your receipt of this letter, by
writing to EEOC, New York District Office, 33 Whitehall Street,
5th Floor, New York, New York 10004-2112. Otherwise, EEOC will
generally adopt our action in your case.

Dated: 4/22/05
        Brooklyn, New York

STATE DIVISION OF HUMAN RIGHTS

By: _Joseph H. Kaufman_____
    Joseph H. Kaufman
    Regional Director